John F. TURNER, Jr. *v.* TRADE WINDS INN
and HARTFORD INSURANCE COMPANY

CA 79-73 592 S.W. 2d 454

Opinion delivered December 12, 1979
Rehearing denied January 16, 1980
Released for publication January 16, 1980

*Estes, Estes & Estes,* for appellant.

*Daily, West, Core, Coffman & Canfield,* by: *Eldon F. Coffman,* for appellees.

Ernie E. Wright, Chief Judge. This is an appeal from a decision of the Workers' Compensation Commission denying appellant's claim for attorney fees and penalty

incident to hospitalization expenses appellant contends were controverted.

The appellant sustained a compensable injury to his right hip on January 19, 1976. The appellees accepted the injury as compensable, have periodically paid statutory benefits and have paid medical expenses in the amount of $75,140.95. The appellant is a hemophiliac and has been in the hospital and treated at the emergency room on a number of occasions since the injury. During some of these hospitalizations the appellant has incurred some expenses for treatment unrelated to the compensable injury.

The hospital bills here relevant were incurred at Sparks Medical Center in Fort Smith and are as follows:

May 9 to May 13, 1978, $4,403.55
June 12 to June 19, 1978, $9,590.70
July 20 to July 24, 1978, $5,949.40.

On May 31, 1978, the compensation carrier's claim supervisor wrote Sparks concerning the bill from May 9 to May 13, acknowledging receipt of the bill, stating some of the charges did not appear related to the injury, and requested a copy of the patient's chart for review in connection with the bill. The letter stated if there was no authorization on file for release of the information to please advise immediately. On June 5, 1978 the hospital accounts representative called the claim supervisor and advised she would require a signed medical release before she could release the requested information. On July 14, 1978 the claim supervisor wrote appellant's attorney of record stating the insurance carrier had received bills for the May and June hospitalization; that the bills did not contain sufficient information as to what the treatment was for, and enclosed an authorization for the signature of appellant with request that the executed release be returned. The letter also stated attorney for appellant would be furnished with copies of reports obtained.

The release was not returned, and on September 18, 1978 appellant's attorney requested a hearing with reference to the bills.

After the hearing it was agreed no compensation payments were in arrears and the matter proceeded to hearing on the issue as to whether the bills were controverted.

The judge found appellees had not expressly controverted the hospital bills, but the delay in paying the May hospital bill was such as to constitute controversion, allowed maximum attorney fees as to that item and denied appellant's claim for penalty under § 81-1319(e) and § 81-1319(f).

On appeal the Workers' Compensation Commission in a comprehensive opinion found respondents had never at any time denied liability for the bills, never filed any intention to controvert with the Commission as provided by Ark. Stat. Ann. § 81-1319 (d), but to the contrary found appellant admitted respondents told him to send them the bills and they would pay them, and that a claim for payment of the bills was never filed with the Commission. The Commission disallowed any attorney fee or penalty.

The claim supervisor for the carrier testified he made the decision to withhold payment of the three hospital bills until they could obtain clarification as to whether the bills were injury related. The appellant's attorney supplied the appellee insurance carrier with copies of hospital medical records on October 20, 1978, only three working days prior to the hearing, and delivered the appellant's medical information release to the appellee insurance carrier on the day of the hearing. Upon securing the medical information the appellee insurance carrier agreed to pay the three bills except for items totaling $121.00. Appellant's attorney never offered any explanation for ignoring the request of the compensation carrier to be furnished medical release authorization except to assert at the hearing a medical release had previously been provided. The prior release had been filed with the hospital some two years earlier; however, for some reason the hospital was not acting pursuant to that request in providing information as to these bills.

On appeal from the Commission the appellant contends the Commission erred in finding all three claims were not controverted and in failing to award attorney fees under

§ 81-1332 and a six per cent penalty under § 81-1319 (e).

The rule is well settled that the findings of the Workers' Compensation Commission will not be disturbed on appeal if supported by substantial evidence. In determining whether there is substantial evidence to support the findings of the Commission, we need only consider the evidence, even though contradicted in whole or part, which is most favorable to the appellee. *Stephens & Stephens, et al* v. *Logan, et al,* 260 Ark. 78, 538 S.W. 2d 516 (1976).

The evidence shows the hospital declined to provide hospital medical records to appellees without a new release authorization from appellant. Appellees were entitled to this information to determine whether the items in the bills were related to the compensable injury. The compensation carrier requested the release through appellant's attorney by letter dated July 14, 1978. A release was not provided until October 24, 1978, the date of the hearing. Appellant's attorney provided appellees with medical information on October 20, 1978 and appellees agreed to pay these bills with a few minor exceptions not here in issue.

There is substantial evidence to support the Commission's findings that appellees had not controverted any of the three hospital bills; that appellant failed to give a good account as to what action he took with reference to the bills; that attorney for appellant failed to cooperate with the appellees in providing the medical information release; and that the hospital failed to help facilitate processing of the bills.

The Commission held the circumstances in evidence placed the issues within the scope of the holding in *Horseshoe Bend Builders* v. *Sosa,* 259 Ark. 267, S.W. 2d 182 (1976), that mere failure of an employer to pay compensation benefits does not amount to controversion, and that this especially is true when the carrier accepts the injury as compensable and is attempting to determine the extent of disability. Here the carrier was attempting to determine the extent of its liability as to the items in the three hospital bills.

The Commission was correct in holding that the penalty

provision of § 81-1319 (e) applies only to disability benefits and has no application to medical bills, and there is substantial evidence to support the finding the bills were not controverted.

Affirmed.

Hayes, J., concurs.

Howard, J., dissents.

M. Steele Hays, Judge, concurring. Were it not for the finding by the Commission that appellant contributed to the delay, a point in dispute, I would join Judge Howard in dissenting, as I am persuaded that the Respondent controverted payment of the May, 1978, hospital bill by withholding payment. Certainly, the Respondent had every right to investigate the items charged by the hospital to satisfy itself that they were proper; however, a suspicion arises that Respondent withheld payment for reasons going beyond the reason stated, i.e., the lack of a current medical authorization. In view of *Clark* v. *Peabody Testing Service,* 265 Ark. 489 and *American Casualty Co.* v. *Jones,* 224 Ark. 731, I cannot justify a finding on my own that this is what occurred, in the face of a finding by the Commission to the contrary, although the testimony satisfies me that payment was withheld for other reasons.

For what it might be worth, Respondent could have clarified its position quite simply by writing promptly to either the Commission or to claimant's attorney, or both, to state the reason payment was withheld and avoided the delay and the fall-out by doing so.

George Howard Jr., Judge, dissenting. I am persuaded that the evidence in this record supports the Administrative Law Judge's finding that the delay on the part of appellee, Hartford Insurance Company, in paying a hospital bill of $19,943.65 constituted controversion, thus, entitling claimant's attorney to a fee.

The majority in affirming this case and concluding that

there is substantial evidence to support the Full Commission's holding that the appellee did not controvert the hospital bills made the following observation:

> The claim supervisor for the carrier testified he made the decision to withhold payment of the three hospital bills until they could obtain clarification as to whether the bills were injury related. The appellant's attorney supplied the appellee insurance carrier with copies of hospital medical records on October 20, 1978, only three working days prior to the hearing, and delivered the appellant's medical information release to the appellee insurance carrier on the day of the hearing. Upon securing the medical information the appellee insurance carrier agreed to pay the three bills except for items totaling $121.00. Appellant's attorney never offered any explanation for ignoring the request of the compensation carrier to be furnished medical release authorization except to assert at the hearing a medical release had previously been provided. The prior release had been filed with the hospital some two years earlier; however, for some reason the hospital was not acting pursuant to that request in providing information as to these bills.

> . . .

> The evidence shows the hospital declined to provide hospital medical records to appellees without a new release authorization from appellant.

But a careful scrutiny of the record reflects the following:

The claim supervisor for the carrier testified:

Q. Would it be a fair statement of fact to say that you are the person who is — makes the decision to pay or not to pay these bills?

A. Yes, sir, that would be a fair statement.

Q. Would it be a fair statement of fact to say that these

bills weren't paid as of September 18th, the date of requesting this hearing?

A. That's correct.

Q. Could it be a fair statement of fact to say that you made that decision not to pay them?

A. Yes, sir.

While the claim supervisor for the carrier stated that he had received a call from the hospital stating that the hospital did not have a medical authorization on file and that he had requested his attorney (Mr. Coffman) to communicate with claimants' attorney (Mr. Estes) for a medical authorization, the claim supervisor testified:

Q. Did you tell Mr. Coffman that you needed a medical authorization because you didn't have one the hospital would accept?

A. No.

Q. Did you tell Mr. Coffman that you needed a medical authorization because you didn't have an up-to-date medical authorization that the hospital would accept?

A. I believe that's more in line with what I told him, that's correct.

Q. But you did have a medical authorization, didn't you?

A. I had a two-year-old medical authorization, that's correct.

Q. And that medical authorization has been used by The Hartford as recent as May 9th of 1978, hadn't it?

A. Evidently, it has.

It is plain from the record that on March 2, 1976, follow-

ing claimant's injury on January 19, 1976, the claimant executed the following medical authorization on a form supplied by Hartford Insurance Company:

> To whom it may concern:
>
> I hereby request and authorize you to disclose, whenever requested to do so by THE HARTFORD INSURANCE GROUP or its representative, any and all information you may have concerning John F. Turner, Jr. with respect to any illness or injury, medical history, consultation, prescription or treatment, including x-ray plates, and copies of all hospital records. A photostatic copy of this authorization shall be considered as effective and valid as the original.

The claim supervisor testified further:

> Q. So, Mr. Scott, it'd be a fair statement of fact to say that you've had this medical release available to you, wouldn't it?
>
> A. Well, it's been maintained in our files, yes, sir.
>
> Q. You had it available to you, didn't you, just answer my question.
>
> A. Yes.
>
> Q. And you could have used that medical release to determine whatever you wanted to determine about these bills, couldn't you?
>
> A. I'm not sure if I could have or not.
>
> Q. Did you try — did you try to —
>
> A. I was advised by Sparks that I couldn't get the requested information without an authorization.
>
> Q. Did you have an authorization?

A. I had one dated probably over two years prior to the time I needed it.

Q. Did you take that medical authorization to Sparks?

A. No I did not.

Q. Did you provide them with a copy through the mail?

A. No I did not.

. . .

Q. Did you tell Mr. Coffman I don't have a medical release?

A. I don't recall exactly what I said specifically, I was asking.

Q. Let me ask you this what was your explanation to Mr. Coffman in requesting a medical release?

A. That I didn't have an authorization I felt that the hospital would accept.

Q. Okay. So, you told Mr. Coffman that you didn't have an authorization that the hospital would accept, is that right?

A. That's correct.

It is clear that the claim supervisor merely assumed that the medical authorization given by claimant on March 2, 1976, was unacceptable to the hospital for there is no evidence that the hospital refused to accept this authorization. Consequently, the claim supervisor persisted in requiring a new medical authorization not because the hospital wanted an up-to-date one as found by the majority, but, on the contrary, on the assumption of the claim supervisor that the hospital would not honor the authorization in his possession. Another parallel paradox in this matter is the claim supervisor's admission, in effect, that the hospital had honored the

medical authorization of March 2, 1976, as late as May 9, 1978.

Under these circumstances, I cannot support the posture taken by the majority in finding that the Commission's holding is supported by substantial evidence — evidence possessing substance and authenticity which reasonable minds might accept as adequate to support a conclusion — therefore, I dissent.