Patty HAMRICK *v.* THE COLSON COMPANY

CA 80-415                                    610 S.W. 2d 281

Court of Appeals of Arkansas
Opinion delivered January 21, 1981

*Sam H. Boyce*, for appellant.

*Frierson, Walker, Snellgrove & Laser*, by: *David N. Laser*, for appellee.

Tom Glaze, Judge. This is an appeal from a decision of the Workers' Compensation Commission denying appellant's claim for statutory fees on temporary total disability benefits and medical expenses arising from a compensable injury sustained on September 7, 1977. The appellant's contention on appeal is simply that although benefits were paid, they were not timely paid by the appellee. Moreover, it is contended that nothing would have been paid unless appellant had hired an attorney. This being true, appellant argues that benefits were controverted, and she is entitled to attorney's fees. The Supreme Court in *Aluminum Company of America* v. *Henning*, 260 Ark. 699, 543 S.W. 2d 480 (1976) treated the question of controversion as one of fact. More specifically, the Court in *Henning* set forth the following standard of review on the controversion issue:

A liberal construction favoring the claimant mandates a holding that the question whether a claim is controverted be one of fact to be determined from the circumstances of the particular case, only one of which is the status of the formal proceedings before the commission, and that, as in other such determinations, the commission's finding should not be reversed if there is substantial evidence to support it, or unless it is clear that there has been a gross abuse of discretion.

The facts in this case are clear and are generally not in dispute. The appellant, Hamrick, sustained a compensable injury to her arm on September 7, 1977. The appellee, Colson, sent Hamrick to its physician, Dr. Wisdom. On this same day Hamrick also saw her family doctor, Dr. Reynolds, who stated she could return to work but must have light duties for at least two weeks. Hamrick returned to Dr. Wisdom on September 9, 1977, at which time the doctor released her for work commencing September 13, 1977. On September 13, Hamrick also saw her attorney and the attorney arranged a doctor's appointment for her on November 16, 1977, with Dr. Lester.

Hamrick returned to work on September 13, and after incurring difficulties in handling her duties, she was unable to continue working from September 15 until September 29. At Hamrick's request, Colson her to Dr. Hudson, a neurosurgeon. It was his opinion that Hamrick had muscle spasms and he advised two or three days rest. Hamrick returned to work on September 29.

The next important event occurred on October 10, 1977, when Hamrick's attorney filed a workers' compensation claim, stating Colson had controverted Hamrick's claim for benefits. Colson then engaged an attorney on or about October 21, 1977, who, by letter to the Commission, stated that from the medical provided it would controvert any sums over and above the monies already paid.

On November 16, 1977, Hamrick kept her appointment with Dr. Lester, but the same day Lester referred her to Dr. Allen. It was Dr. Allen, who, on November 16, first decided

Hamrick required surgery. Hamrick arranged for the surgery to be done on December 5, 1977. Colson then received Dr. Allen's report on November 21, 1977, and its attorney, by letter dated November 23, 1977, requested a second opinion by an orthopedist, Dr. Dickson, and further asked Hamrick's attorney to permit the second examination prior to any surgery to be performed by Dr. Allen. On or about November 30, 1977, Hamrick apparently first notified Colson that she would have her surgery on December 5, 1977, and Colson in turn promptly notified its attorney. After some scheduling difficulties in trying to arrange an appointment prior to December 5, Colson did schedule and Hamrick met an appointment with Dr. Rosensweig on December 2, 1977. Dr. Rosensweig agreed with Dr. Allen's opinion and decision that surgery was necessary. After learning of Dr. Rosensweig's opinion, Colson's attorney confirmed by letter dated December 8, 1977, to the Commission that Colson acknowledged Hamrick's claim to be compensable and did in fact pay all benefits commencing December 19, 1977, two weeks after the date of surgery.

After the Commission reviewed the above facts and evidence of record, it concluded, among other things, that Colson had demonstrated good faith in meeting its obligations under our workers' compensation law, and the Commission rendered an opinion that Hamrick had simply not shown by a preponderance of evidence that her claim had been controverted. As is noted in *Henning*, the finding should not be reversed if there is substantial evidence to support it or unless the Commission abused its discretion. See also, *Turner* v. *Trade Winds Inn*, 267 Ark. 861, 592 S.W. 2d 454 (1980). Moreover, it is well settled that the mere failure of an employer to pay compensation benefits does not amount to controversion, especially in instances when the carrier accepts the injury as compensable and is attempting to determine the extent of disability. *Horseshoe Bend Builders* v. *Sosa*, 259 Ark. 267, 532 S.W. 2d 182 (1976).

In resolving the issue of whether the evidence warrants the Commission's finding that no controversion occurred, there are certain facts in the record which we conclude substantiate such a decision. First, Hamrick had seen three doc-

tors (including her own) who had never diagnosed her specific medical problem, and therefore, none of the three recommended surgery. The doctors informed her she suffered from a pulled muscle or muscle spasms. Colson relied on this medical advice in its decision to pay no further medical expenses. The general rule is that when an employer contends that he acted in reliance upon responsible medical opinion in refusing or terminating benefits, penalties (statutory fees) are not ordinarily imposed. 3 *Larson's Workmen's Compensation Law*, § 83.40 (1976). In this case, Hamrick was not only referred to the doctor who normally evaluated Colson's employees, but also she saw a specialist (neurosurgeon), and her own family doctor. There is no reason to believe from the record that Hamrick did not receive responsible medical treatment. Secondly, no additional or contrary medical evidence to that which Colson already had was provided by Hamrick's attorney until November 21, 1977. This was true even at the time Hamrick's attorney filed her claim on October 10, 1977. The proof clearly shows that no one knew the extent of Hamrick's real injury until Dr. Allen's diagnosis on November 16. Thus, it is logical to assume from these facts that no actual controversion could have existed until Dr. Allen's opinion was obtained and presented to Colson for its evaluation. It was after receipt of Dr. Allen's report that the extent of Hamrick's injury became known by Colson.

The statutory law which controls when the employer must provide medical, surgical, hospital and nursing services to the employee is set forth in Ark. Stat. Ann. § 81-1311, which in pertinent part states:

> The employer shall promptly provide for an injured employee such medical, surgical, hospital and nursing services . . . as may be reasonably necessary for the treatment of the injury received by the employee . . . *within a reasonable time after knowledge of the injury.* [Emphasis supplied.]

As mentioned earlier, Colson was unaware of the extent of Hamrick's injury until November 21, 1977, which was forty-two days after Hamrick's attorney filed her claim and thirty-one days after Colson filed a letter controverting the

claim based on the previous medical. Up to this point in time, all medical reports indicated no need for surgery and, in fact, Hamrick worked during this entire period from September 29, 1977, to December 5, 1977. Based on these facts, it is difficult to understand what more Colson could have done. Colson had paid medical expenses and compensation benefits based on the current medical, it referred Hamrick, upon her request, to another physician, a neurosurgeon, and Hamrick was permitted to work and draw wages until the date of surgery. Certainly these facts are consistent with the Commission's finding that Colson demonstrated good faith.

Colson's actions after it was confronted with Dr. Allen's new and conflicting medical report are important. The attorney for Colson promptly sought an early, independent medical opinion to confirm Dr. Allen's diagnosis and surgery recommendation. Since Hamrick had already scheduled her surgery for December 5, 1977 (which she chose not to delay), problems arose in scheduling an appointment in advance of surgery. A letter by Colson's attorney dated December 1, 1977, indicated that Hamrick had not advised Colson until on or about November 30, 1977, that her surgery would be on December 5. An appointment was finally arranged, however, and Hamrick was examined by Dr. Rosensweig on December 2, 1977, i.e., eleven days after Colson first gained knowledge of Dr. Allen's opinion and three days before the date of surgery. Under these pressing circumstances and time deadlines, Colson's actions were prompt in its attempt to obtain another medical opinion upon which it could base a decision to either controvert or not controvert the medical expenses and disability payments to be incurred due to Dr. Allen's opinion. Colson assumed responsibility for Hamrick's medical expenses and surgery six days after Dr. Rosensweig examined Hamrick, confirming the extent of her injury. Again, the time and manner in which Colson acted was such that the Commission could find it to be reasonable.

If there had been conflicting medical evidence at the time Hamrick's claim was filed, our decision, and most likely the Commission's, would be different. Moreover, if there was other evidence which would show Colson had acted in bad faith or had unreasonably delayed its investigation of

Hamrick's claim, a different result would have been reached. We have indicated that on appeal this court will not interfere with the Commission's determination on the issue of attorney's fees unless there is an abuse of discretion. We are of the view that the Commission did not abuse its discretion and, further, there was substantial evidence to sustain its finding that appellant failed to show her claim was controverted.

Affirmed.

CLONINGER and COOPER, JJ., dissent.