SUNBEAM CORPORATION
*v.* Lamar BATES

CA 80-322      .      609 S.W. 2d 102
Court of Appeals of Arkansas
Opinion delivered December 10, 1980

*Anderson & Kilpatrick*, by: *Joseph E. Kilpatrick, Jr.*, for appellant.

*Youngdahl & Larrison*, for appellee.

JAMES H. PILKINTON, Judge. This is a workers' compensation case. The issue is the extent of appellee's disability. At the hearing below it was stipulated that appellee had sustained a compensable injury on or about March 18, 1977, and was entitled to the maximum weekly benefit of $84.00. Temporary total disability was paid until May, 1977. After May, 1977, appellant paid additional permanent disability benefits.

until June 12, 1979, the date of the hearing, based upon a permanent disability rating of 15% to the body as a whole, which appellant insisted was correct.

Appellee contends that he had sustained compensable injuries while working for appellant in 1972 and in 1975; and again finally on March 18, 1977. The last injury required back surgery. Appellee claimed that he had not returned to work since March 18, 1977, due to the injuries. He claimed that additional benefits were due.

Appellant has controverted payment of any permanent disability benefits over 15% to the body as a whole.

The administrative law judge found, among other things, that appellee is totally disabled. The Arkansas Workers' Compensation Commission adopted and affirmed the opinion of the administrative law judge. The Commission determined that the healing period ended on October 2, 1978, and entered an award directing payment of weekly benefits from that date forward as long as appellee remains totally disabled. Appellant has appealed to this court from the findings and award of the Commission.

Appellant contends there is no substantial evidence to support an award in excess of 15% to the body as a whole. Under the principles of the Workers' Compensation law as explained by this court and the Arkansas Supreme Court on many occasions, the decision of the Workers' Compensation Commission must stand if supported by substantial evidence. The findings of fact made by the Commission are given the same standing as a jury verdict. *Barksdale Lumber Company* v. *McAnally*, 262 Ark. 379, 557 S.W. 2d 868 (1977).

Appellee testified that he was forty-four years of age, married and had two children living at home. It is undisputed that appellee had an eighth grade education, and no vocational training. He had started working for the appellant in 1967. Prior to that time, he had worked as a farm laborer, as a tractor operator for the highway department, as a plumber's helper, and as a leather cutter. Appellee further testified that since going to work for the appellant company

in 1967, he had performed nearly every job in the factory. He testified that he first injured his lower back in 1972 and was treated by Dr. Robinson in Dumas. He testified that he hurt his back again in 1975 and that time was treated not only by Dr. Robinson but also by Dr. Sam Thompson in Little Rock. It is undisputed that claimant injured his back again on March 18, 1977.

According to the evidence, appellee had not received any injury other than those sustained while working for the appellant. Subsequent to his injury in March, 1977, he had surgery performed by Dr. Robert Dickins and remained under his care as of the date of the hearing. According to appellee his back still gave him trouble and he had difficulty sleeping but was able to get along without medication.

Appellee testified that he had attempted to return to work for appellant in December of 1978. According to his testimony he saw the personnel manager, Ms. Margie Poole, who apparently had all of the doctors' reports on the claimant at the time. Appellee says that Ms. Poole did not put him to work but told him she would let him know something in a few days. Appellee testified that he had not had any word from the company since his conversation with the personnel manager, although on more than one occasion he has talked with Ms. Poole in regard to the payment of bills and weekly benefits. Appellee candidly admitted that if the firm had a job which it would allow him to undertake, he would go back immediately.

The appellee testified that he had attempted to find work at other places. He said that he had made applications at the unemployment office in Dumas, at Curt's Auto Parts Store, T. A. Edwards Trucking Company, the Piggly Wiggly store, Richard Powell's One Stop, and at the Catfish Kitchen. Appellee said that he had lived in the Dumas area for twelve years but had been reared sixteen miles east of Dumas at a town called Watson. He stated that he knew the people in the area and they knew him. He had been unsuccessful in his efforts to find work in the area. The record shows that he had even talked to a friend of twenty years about a job at a car lot, but this friend also would not hire him. In addition to the

appellee's efforts to obtain employment at most available sources in the area, the record shows that appellant employed the Southern Rehabilitation Service to attempt to rehabilitate the appellee. The record shows that appellee went to Little Rock in December of 1978 and took tests, and in January of 1979 he was contacted at Dumas by a representative of the Southern Rehabilitation Service. He has had no further contact whatsoever from Southern Rehabilitation Service since January of 1979.

A review of the medical records in this case indicates that the appellee has a long-standing back problem which originated as a compensable injury while working for the appellant. The problems he has had since that time have all been related to his employment with the appellant. His testimony indicates that he would be working for appellant right now if appellant would allow him to return. The unexplained refusal by appellant to allow appellee to return to work is inconsistent with its position that he is only 15% disabled. The record is clear and undisputed that appellee has made a good faith effort to find employment in a somewhat rural area. Thus far, all of his attempts to find employment have been unsuccessful and, as far as this record shows, the efforts of the Southern Rehabilitation Service employed by appellee have been abandoned. We find that there is substantial evidence to support the Commission's finding that the appellee is, in fact, totally disabled as a direct result of the injuries he has sustained at the appellant plant. It follows, of course, that appellee is entitled to be compensated for total disability benefits until such time as his total disability ceases. As a result of these industrial injuries, appellee has been placed in a rural labor market with very limited education, at forty-five years of age with three back injuries which have resulted in surgery and a permanent impairment rating of 15% to the body as a whole. The consequence of this situation is apparent. The appellee cannot secure employment. This case is governed by Ark. Stat. Ann. § 81-1313(a) (Repl. 1976). The pertinent provisions reads as follows:

(a) *Total Disability.* In case of total disability, there shall be paid to the injured employee during the con-

tinuance of such total disability 66-2/3 of his average weekly wage. . . .

The term "disability" is defined in Ark. Stat. Ann. § 81-1302(e) as follows:

(e) 'Disability' means incapacity because of injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the injury.

The plain meaning of the language quoted above is that if the appellee is totally incapacitated to earn in the same or any other employment the wages he was receiving at the time of his injury, then he is entitled to receive weekly benefits "during the continuance of such total disability".

By making this award, the Commission hoped that the appellee's disability is not permanent and that he will eventually remain an employment status. That, however, remains to be seen.

Since the decision and award of the Arkansas Workers' Compensation Commission is supported by substantial evidence, it is our duty to affirm.

NEWBURN, J., dissents.

DAVID NEWBERN, Judge, dissenting. The majority has cited no case, and I know of none, which interprets our Workers' Compensation Act or that of any other jurisdiction to permit payment of total disability benefits beyond the healing period and "during the continuance of such total disability."

The appellee's testimony shows clearly that there are many jobs he could do for Sunbeam or a similar company. The entire basis for parlaying this injury of 15% to the body as a whole into this new kind of "limited" total disability is the fact that Sunbeam will not rehire the appellee. The appellee's brief says:

It should be noted that the appellant could avoid paying the appellee another nickel in disability benefits by simply allowing him to return to employment.

The appellee goes on, however, to recite factors which might lead to a conclusion the appellee is totally disabled in the sense that has become traditional in this jurisdiction since the decision of *Glass* v. *Edens*, 233 Ark. 786, 346. S.W. 685 (1961). His brief continues:

> However, since they have refused to do so without any explanation, they have placed the appellee in a rural labor market with a very limited education, 47 years old with three back injuries which have resulted in a surgery and a permanent impairment rating of 15% to the body as a whole. The consequences of this conduct on the part of the appellant are apparent, the appellee cannot secure employment.

In a way, I believe the decision of the majority makes good sense. If we sent the matter back to the commission and said they would have to assess the level of the appellee's disability "finally" they might simply say the appellee is permanently and totally disabled and be done with it. Maybe the majority is doing the appellant a favor by affirming the commission, as at least there is a chance that if the appellant can catch the appellee earning money later it can return to the commission and get some sort of new determination.

While I appreciate the seemingly practical nature of this decision, I question whether there is authority for it, and I fear it will create a very impractical precedent.

The majority predicates this new class of disability, which I will refer to as "limited" total disability on Ark. Stat. Ann. § 81-1313 (Repl. 1976), which reads as follows:

> Compensation for disability. — The money allowance payable to an injured employee for disability shall be as follows:
> (a) Total Disability. In case of total disability there shall be paid to the injured employee during

the continuance of such total disability sixty-six and two thirds percent (66 2/3%) of his average weekly wage.

. . . .

The subsections which follow prescribe amounts to be paid for "temporary partial disability" and "scheduled injuries." No separate subsection is devoted to "temporary total disability," thus it appears to me that the reason for inclusion in subsection (a) of the words "during the continuance of such total disability" is the intent of the drafter to have it prescribe the benefits to be paid for total disability whether it is permanent or the sort that may exist during the "healing period" defined in Ark. Stat. Ann. § 81-1302(f) (Repl. 1976). Our supreme court has clearly recognized and applied the concept of "temporary total disability," meaning the kind that exists during a healing period or until permanent disability, if any, can be assessed. *International Paper Co.* v. *McGoogan*, 255 Ark. 1025, 504 S.W. 2d 739 (1974).

Rather than Ark. Stat. Ann. § 81-1313, *supra*, the purpose of which is to declare the specific *amounts* to be paid, I believe the section intended to set forth the *periods* of compensation payments in Ark. Stat. Ann. § 81-1310 (Supp. 1979), which provides:

Compensation — Periods — Maximum and minimum amounts. — (a) Disability. Compensation to the injured employee shall not be allowed for the first seven (7) days disability resulting from injury, excluding the day of injury. If a disability extends beyond that period, compensation shall commence with the ninth (9th) day of disability. If the disability extends for a period of two (2) weeks compensation shall be allowed beginning the first day of disability, excluding the day of injury.

Compensation payable to an injured employee for disability shall not exceed sixty-six and two-thirds percent (66 2/3%) of the employee's average weekly wage, with a fifteen dollar ($15.00) per week minimum, subject to the following maximums:

(A) For a disability occurring after March 1, 1978

through February 28, 1979, the maximum weekly benefits payable shall be eighty-seven dollars and fifty cents ($87.50). The benefits shall be paid for a period of not to exceed 450 weeks of disability and shall not exceed thirty-nine thousand three hundred seventy-five dollars ($39,375.00) and shall be paid in addition to the benefits and allowances under Section 11 (Section 81-1311) hereof. The maximum limitations of time and money expressed in the foregoing sentence shall apply in all cases pertaining to the payment of money compensation except in cases of permanent total disability.

. . . .

If, as the majority suggests, § 81-1313 determines the duration of compensation for total disability after the healing period, then why did the General Assembly limit in § 81-1310 payment for other than permanent total disability to 450 weeks?

Both § 81-1310 and decisions typified by the *International Paper Co.* case, *supra*, contemplate that at some point, and I suggest it is upon termination of the healing period or rehabilitation, if applicable [see, § 81-1310(f)], a determination of permanent disability, or lack of it, should be made. The majority apparently would permit the matter to drag on almost interminably. While we have recognized that refusal of a former employer to rehire an employee who has at least a partial permanent disability is strong evidence of permanent disability, *M. M. Cohn* v. *Haile*, 267 Ark. 53, 589 S.W. 2d 600 (Ark. App. 1979), neither we nor our supreme court have taken the position that a decision on the question of permanent disability should be delayed to see if the employee will get work.

I see some danger in this decision. First, it may stimulate the commission to shirk what I perceive to be its obligation to make final decisions. That, in turn, may stimulate employers to try to ride herd on former employee who have been determined to be totally disabled in this "limited" way but who may get some sort of job and then be hauled back before the commission for a reevaluation. That kind of interminable

contest may not be all bad, but the possible prospect of wasted resources of the parties and the commission should be considered. I believe had such a scheme been intended by the General Assembly, it would have been spelled out.

Even more troublesome to me, however, is the discouraging effect this status of "limited" total disability is bound to have upon one who occupies it. If he tries to work, he loses his benefits. A claimant who had been determined to be permanently and totally disabled should be permitted to earn money without threat of losing his workers' compensation benefits. As our supreme court said, quoting Larson, *Workmen's Compensation Law*, § 57.10, in *Glass* v. *Edens, supra*:

> The two ingredients usually occur together; but each may be found without the other; a claimant may be, in a medical sense, utterly shattered and ruined, but may by sheer determination and ingenuity contrive to make a living for himself; conversely, a claimant may be able to work, in both his and the doctor's opinion, but awareness of his injury may lead employers to refuse him employment. These two illustrations will expose at once the error that results from preoccupation with either the medical or the wage-loss aspect of disability. An absolute insistence on medical disability, in the abstract would produce a denial of compensation in the latter case, although the wage-loss is as real and as directly traceable to the injury as in any other instance. At the other extreme, an insistence on wage-loss as the test would deprive the claimant in the former illustration of an award, thus not only penalizing his laudable efforts to make the best of his misfortune, but also fostering the absurdity of pronouncing a man non-disabled in spite of the unanimous contrary evidence of medical experts and of common observation. The proper balancing of the medical and the wage loss factors is, then, the essence of the "disability" problem in workmen's compensation.

In my opinion it is the duty of the commission to make the "pronouncement," attempting to avoid either "absurdity." The task is difficult, but I believe the Act should be in-

terpreted to impose this duty to make a final determination when the healing period has ended and there is no prospect of rehabilitation in the sense of § 81-1310(f).

For these reasons, I respectfully dissent.