## MAD BUTCHER, INC. & CONTINENTAL INSURANCE COMPANY *v.* Carl PARKER

CA 81-133                           628 S.W. 2d 582

Court of Appeals of Arkansas
Opinion delivered February 24, 1982
[Rehearing denied March 24, 1982.]

*Chester C. Lowe, Jr.,* for appellants.

*Donald Frazier,* for appellee.

JAMES R. COOPER, Judge. The appellee in this case suffered a broken foot on January 23, 1979, in the course of subduing a shoplifter while working for the appellant Mad Butcher. Appellee was paid temporary total disability benefits from January 24, 1979, to May 5, 1979, and from August 20, 1979, through January 18, 1980. The administrative law judge found that appellee again became temporarily totally disabled as of July 2, 1980, and that disability still existed and would continue to exist until an undetermined date. The administrative law judge also found that appellee had incurred reasonable and necessary additional medical expenses which were controverted by appellants, that the appellants controverted additional temporary total disability benefits, and that the question of evaluation for vocational rehabilitation should be reserved until a date in the future.

The Workers' Compensation Commission affirmed the decision of the administrative law judge with slight modification. The Commission found appellee to be temporarily totally disabled for an indefinite period; that he had incurred reasonable medical expenses for which appellants were liable; that his orthopedic shoes should be paid for by appellants as well as his travel expenses; that it was necessary

for appellee to be treated in a pain clinic by Dr. Boop and that those expenses should be borne by appellants; and that the appellants must pay for a vocational rehabilitation evaluation. The Commission further awarded attorney's fees based on the entire award plus a fee for having prevailed on appeal before the full Commission. Apparently Commissioner Tatum participated to some extent in the hearing before the full Commission but, prior to the issuance of the opinion, he disqualified himself. The remaining two Commissioners signed the opinion. Appellants petitioned the Commission for a rehearing based on several grounds. The Commission denied the petition for rehearing. Several grounds are urged for reversal.

I.

THE OPINION AND AWARD FILED MARCH 13, 1981, AND THE ORDER FILED APRIL 7, 1981, BOTH WERE DECIDED BY ONLY TWO COMMISSIONERS AND ARE THEREFORE UNLAWFUL AND INVALID BY VIRTUE OF ARK. STAT. ANN. § 81-1342.1 (SUPP. 1979), WHICH REQUIRES THE APPOINTMENT BY THE GOVERNOR OF A SPECIAL COMMISSIONER IN THOSE CASES, AS HERE, IN WHICH A MEMBER OF THE COMMISSION BECOMES DISQUALIFIED FOR ANY REASON TO HEAR AND PARTICIPATE IN THE DETERMINATION OF ANY MATTER PENDING BEFORE THE COMMISSION.

Arkansas Statutes Annotated § 81-1342.1 (Supp. 1981) provides as follows:

Appointment of Special Member. — Hereafter, when any member of the Arkansas Workmen's Compensation Commission is disqualified for any reason to hear and participate in the determination of any matter pending before the Commission, the Governor shall appoint a qualified person to hear and participate in the decision on the particular matter. The special member so appointed shall have all authority and responsibility with respect to the particular matter

before the Commission as if such person were a regular member of the Commission, but shall have no authority or responsibility with respect to any other matter before the Commission.

Appellants argue that this statute is mandatory by virtue of its use of the word "shall". Appellee argues that the use of the word "shall" is merely directory rather than mandatory. The question of whether a statute is mandatory or directory has been raised in several cases in this State.

In *State* v. *Grace,* 98 Ark. 505, 136 S.W. 670 (1911), the Arkansas Supreme Court dealt with a provision in Kirby's Dig. § 2256, which provided as follows:

Upon an indictment being found, if the defendant is not in custody or on bail, the court shall forthwith make an order for process to be issued thereon, designating whether it shall be for arresting or summoning the defendant; and if for arresting the defendant, and the offense charged is bailable, the sum in which he may be admitted to bail shall be fixed.

In construing that section, the Supreme Court said:

In determining whether the words shall have a mandatory or directory effect ascribed to them, the purposes of the act, the ends to be accomplished, the consequences that may result from one meaning or the other, and the context are to be considered. In the application of these rules to the statute under consideration, we have reached the conclusion that the language, 'the court shall forthwith make an order for process to be issued thereon,' is not mandatory upon the circuit court but is directory merely.

In *Arkansas State Highway Commission* v. *Mabry,* 229 Ark. 261, 315 S.W. 2d 900 (1958), the petitioner sought a writ of mandamus to force the Highway Commission to purchase the Toad Suck Ferry based on the provisions of Act No. 3 of 1957 (extended session). This act appropriated, payable out of the State Highway Department fund, for ferries in the State highway system, "$25,000.00 which shall be paid for

the purchase of the ferry on the Arkansas River which connects Highway 60 between Faulkner and Perry Counties". In construing that act, the Supreme Court stated:

> To carry out the legislative intent the word 'shall' may in certain circumstances, we think, as here presented, be construed as the equivalent of 'may'. 'Ordinarily the words "shall" and "must" are mandatory, and the word "may" is directory, although they are often used interchangeably in legislation. This use without regard to their literal meaning generally makes it necessary for the courts to resort to construction in order to discover the real intention of the legislature. Nevertheless, it will always be presumed by the court that the legislature intended to use the words in their usual and natural meaning. If such a meaning, however, leads to absurdity, or great inconvenience, or for some other reason is clearly contrary to the obvious intention of the legislature, then words which ordinarily are mandatory in their nature will be construed as directory, or vice versa. In other words, if the language of the statute, considered as a whole and with due regard to its nature and object, reveals that the legislature intended the word "shall" and "may" to be directory, they should be given that meaning'. Crawford — Statutory Construction, Sec. 262 p. 519.

There was a strong dissent in that case which pointed out that in order for the rules of construction to be applied, the language to be interpreted must in some way be ambiguous. Since the dissenting justices saw no ambiguity, they felt the intent of the legislature was clear.

The appellants correctly point out that the language of the statute in the case at bar is not particularly ambiguous, but in determining whether the legislature intended for the words used to be mandatory rather than directory, we must look at the entire act. Arkansas Statutes Annotated § 81-1342 (e) (Repl. 1976) provides as follows:

> Quorum. A majority of the Commission shall constitute a quorum for the transaction of business, and

vacancies shall not impair the right of the remaining members to exercise all the powers of the full Commission, so long as a majority remains. Any investigation, inquiry or hearing which the Commission is authorized to hold or underake may be held or undertaken by or before any one [1] member of the Commission, or referee acting for him, under authorization of the Commission.

The common law rule is that action may be taken by a majority of the members present, so long as that number is sufficient to constitute a quorum of the body. *Benton County Taxpayers Ass'n, Inc.* v. *Bolain,* 252 Ark. 472, 479 S.W. 2d 566 (1972). In *Federal Trade Commission* v. *Flotill Products, Inc.,* 389 U.S. 179, 88 S. Ct. 401, 19 L. Ed. 2d 398 (1967), the United States Supreme Court dealt with the question of whether an enforceable cease-and-desist order of the Federal Trade Commission required the concurrence of a majority of the full Commission, or only of a majority of the quorum that participated in the decision to issue the order. The Federal Trade Commission has five members and the United States Supreme Court pointed out that the Federal Trade Commission Act did not specify the number of Commissioners which constituted a quorum. In that opinion, the Court said:

The almost universally accepted common-law rule is the precise converse — that is, in the absence of a contrary statutory provision, a majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body. Where the enabling statute is silent on the question, the body is justified in adhering to that common-law rule.

When Ark. Stat. Ann. § 81-1342 (e) is considered along with Ark. Stat. Ann. § 81-1342.1, it appears that the legislature was merely creating the mechanics for filling vacancies caused by disqualification. The emergency clause in Ark. Stat. Ann. § 81-1342.1 pointed out that there was no authority for the appointment of special members to the Commission when a regular member was disqualified and, therefore, it was in the public's best interest that authority be

provided for the appointment of special members. We hold that the legislature intended to create the mechanics for appointment of members to fill vacancies caused by disqualification but that in doing so the legislature did not intend to modify, repeal, or alter the earlier statute which determined what constituted a quorum for the purpose of exercising "all the powers of the full Commission". Such a result is consistent with the entire act and with the common-law rule.

## II.

### THERE IS NOT SUFFICIENT COMPETENT EVIDENCE IN THE RECORD IN ANY EVENT TO SUPPORT THE COMMISSION'S FINDINGS THAT APPELLEE CARL PARKER IS ENTITLED TO ADDITIONAL TEMPORARY TOTAL DISABILITY BENEFITS.

On January 18, 1980, Dr. William L. Steele released appellee from observation and treatment with a permanent impairment rating of 25 per cent of the amputation value to the lower extremity below the knee. Thus, the injury was a scheduled one. Ark. Stat. Ann. § 81-1313 (c) (Repl. 1976). The issue of whether appellee is entitled to temporary total or temporary partial disability benefits must be determined based on whether the appellee's healing period was still continuing or whether it had ended in January, 1980, when he was rated by Dr. Steele.

In *International Paper Co.* v. *McGoogan*, 255 Ark. 1025, 504 S.W. 2d 739 (1974), the Arkansas Supreme Court held that temporary total disability benefits were payable from the date of the injury through the end of the healing period. The *International Paper* case was a scheduled injury case.

Arkansas Statutes Annotated § 81-1302 (f) (Repl. 1976) defines the healing period as being "that period for healing of the injury resulting from the accident". The healing period continues until the employee is as far restored as the permanent character of his injury will permit. If the underlying condition causing the disability has become

stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. The persistence of pain may not of itself prevent a finding that the healing period is over, provided that the underlying condition has stabilized. 2 Larson, The Law of Workmen's Compensation, § 57.12, pp. 10-8 — 10-16 (1981).

The determination of when the healing period has ended is a factual determination that is to be made by the Commission. If that determination is supported by substantial evidence, it must be affirmed on appeal. *Porter Seed Cleaning, Inc.* v. *Skinner,* 1 Ark. App. 235, 615 S.W. 2d 380 (1981). The evidence in the record shows that Drs. Steele, Thompson, and Galbraith agreed that the appellee had reached his maximum degree of physical recovery. The evidence shows that the healing period ended when Dr. Steele released the appellee from treatment and rated him as to the degree of permanent injury. There is no evidence to support a finding that the appellee's healing period had not ended. Since his healing period had ended, appellee could not be entitled to additional temporary total disability benefits. Therefore, the decision of the Commission on this point is reversed.

Even though the appellee is not entitled to temporary total, he may very well be entitled to "current" total disability benefits. Therefore, this case is remanded to the Commission for it to consider the appellee's disability in light of *City of Humphrey* v. *Woodward,* 4 Ark. App. 64, 628 S.W. 2d 281 (1982), and *Sunbeam Corp.* v. *Bates,* 271 Ark. 385, 609 S.W. 2d 102 (Ark. App. 1980).

### III.

THERE IS NOT SUFFICIENT COMPETENT EVIDENCE IN THE RECORD IN ANY EVENT TO SUPPORT THE COMMISSION'S FINDING THAT APPELLANTS SHOULD PAY APPELLEE CARL PARKER'S ADDITIONAL MEDICAL EXPENSES.

Arkansas Statutes Annotated § 81-1311 (Supp. 1979) states that the employer shall provide to the injured em-

ployee all medical services which "may be reasonably necessary for the treatment of the injury received by the employee".[1] The right to medical benefits is separate and distinct from the right to income benefits. 2 Larson, The Law of Workmen's Compensation § 61.11 (b), p. 10-671 (1981). Medical benefits can continue even after the income benefits cease. See, *Brooks* v. *Arkansas-Best Freight System, Inc.*, 247 Ark. 61, 444 S.W. 2d 246 (1969).

On January 18, 1980, the appellee was released from observation and treatment and was rated as to his permanent impairment by Dr. Steele. After his release, the appellee was examined twice by Dr. Steele. During these examinations, the appellee complained of pain, stiffness, and swelling relating to his original injury. In June, 1980, the appellee moved to Flippin from Little Rock. On July 2, 1980, he contacted Dr. Carson regarding pain and other problems that he was having with his injured foot. Dr. Carson examined the appellee, gave him some medication and referred him to Dr. Sward, an orthopedic surgeon. Dr. Sward examined the appellee and later referred him to Dr. Galbraith. Dr. Galbraith hospitalized the appellee for certain tests. During the time the appellee was hospitalized, he was also examined by Dr. Thompson.[2] Dr. Galbraith and Dr. Thompson stated that the appellee had reached his maximum degree of physical recovery. They did refer the appellee to Dr. Boop for evaluation and possible treatment in a pain clinic program.

The Workers' Compensation Commission Rule 21, regarding change of physicians, does not apply so as to preclude payment for services as to Dr. Thompson and Dr. Boop. Dr. Steele, appellee's original physician, instructed Dr. Thompson to examine the appellee. Dr. Thompson concurred in Dr. Galbraith's referral of the appellee to Dr. Boop. Therefore, these changes of physicians occurred as a result of Dr. Steele's referral and are not precluded by Rule 21.

---

[1] The case at bar was decided under Ark. Stat. Ann. § 81-1311 as it existed in 1980. This statute has been amended by Act No. 290 of 1981.

[2] Dr. Thompson is a partner of Dr. Steele and was examining the appellee pursuant to Dr. Steele's instructions.

With regard to Drs. Carson, Sward, and Galbraith, Rule 21 would preclude payment for their services by the appellants, if applied literally. However, the Commission has discretion to allow deviation from its rules where it finds compliance with the rules is impossible or impracticable. Workers' Compensation Commission, Rule 23. Our review of this question is limited to a finding of whether the Commission abused its discretion in holding the appellants liable for these services. *Rogers* v. *International Paper Co.,* 1 Ark. App. 164, 613 S.W. 2d 844 (1981). The administrative law judge found that the appellee's location in Flippin and its geographical distance from Little Rock was a good reason to seek care nearer his residence. This finding was affirmed by the full Commission. We cannot say that this finding constitutes an abuse of discretion. Therefore, we hold that the appellants are liable for all medical expenses incurred by appellee. Further, the Commission's finding that the appellants have controverted these payments is affirmed.

### IV.

THERE IS NOT SUFFICIENT COMPETENT EVIDENCE IN THE RECORD IN ANY EVENT TO SUPPORT THE COMMISSION'S FINDING THAT APPELLEE CARL PARKER IS ENTITLED TO BENEFITS FOR VOCATIONAL REHABILITA-TION, WHICH WAS DECIDED PREMATURELY.

Arkansas Statutes Annotated § 81-1310 (f) (Supp. 1979) provides that an employee who is entitled to receive compensation benefits for a permanent disability can receive rehabilitation benefits if the Commission finds that the rehabilitation program is reasonable. The request for such a program must be filed with the Commission prior to a determination of the amount of permanent disability benefits.

The appellee's permanent disability has never been determined by the Commission. The appellee's request for vocational rehabilitation was made before the Commission determined his permanent disability and before the statute

of limitations governing workers' compensation cases had run. The Commission's decision requires the appellants to pay for a rehabilitation evaluation. We affirm the decision of the Commission on this point.

This case is affirmed in part and reversed and remanded in part to the Commission to make a determination regarding disability benefits consistent with this opinion.

Affirmed in part, reversed and remanded in part.

MAYFIELD, C.J., concurring.