MORO, INC. and THE HOME INSURANCE
COMPANY v. Andre DAVIS

CA 82-98                                        638 S.W.2d 694

Court of Appeals of Arkansas
Opinion delivered September 8, 1982
[Rehearing denied October 6, 1982.]

*Tom Forest Lovett, P.A.,* by: *Tom F. Lovett,* for appellant.

*M. J. Probst,* for appellee.

TOM GLAZE, Judge. This workers' compensation case presents us with four important issues: (1) whether appellant controverted appellee's (claimant's) request for rehabilitation as provided for under Ark. Stat. Ann. § 81-1310 (f) (Supp. 1979); (2) whether appellant controverted appellee's entitlement to permanent partial disability benefits; (3) whether appellee's healing period continues and he is entitled to temporary total disability; and (4) whether appellee was excused from filing a petition for a change of physician pursuant to Ark. Stat. Ann. § 81-1311 (Supp. 1979),[1] thereby permitting the Commission to require appellant to pay the medical bills of a second physician. These issues arose out of appellee's compensable injury which occurred on October 31, 1979. Dr. H. Elvin Shuffield treated appellee, rated him as having 10% impairment to the body as a whole and released him to resume regular employment effective April 5, 1980. Appellee did not return to work, claiming he still had back problems, and the sequence of events that followed gave rise to the issues under consideration in this appeal.

---

[1] Sections 81-1310 (f) and 81-1311 were subsequently amended by Act 290 of 1981.

First, we consider the Commission's finding that the appellant controverted vocational rehabilitation benefits. Its decision was based largely on the following letter dated May 13, 1980, from the appellant to appellee's attorney:

It is our position at this time that additional medical treatment and/or rehabilitation is not necessary and we are unwilling to pay for same.

Appellant wrote this letter in response to a May 1 letter from appellee's attorney to the effect that appellee had an appointment with Roy Murtishaw, a clinical psychologist, for an evaluation and rehabilitation program. Apparently, the parties did not discuss the rehabilitation again until appellee broached the subject at a hearing before an Administrative Law Judge on September 17, 1980. At this hearing, the rehabilitation question was discussed extensively. In support of his claim, appellee introduced a report by Dr. Harold Chakales dated July 30, 1980, that reflected Chakales believed appellee should be a candidate for rehabilitation. Appellant still denied the need for rehabilitation and expressed its desire to obtain a report on the subject from Little Rock psychiatrist, Dr. Henry Good. At this same hearing, appellant also claimed that a May 29, 1980, report by Murtishaw, appellee's psychologist, indicated appellee was "an unlikely candidate for vocational rehabilitation." Our review of Murtishaw's report in no way bears out this claim. The report reflects no mention of rehabilitation but merely relates Murtishaw's evaluation of appellee's psychophysiological difficulties.

Rehabilitation was again mentioned at a second hearing before the Administrative Law Judge on December 10, 1980. By this time, Murtishaw had reported that he had recommended appellee be evaluated for rehabilitation and that he had referred him on July 28, 1980, to the Arkansas Rehabilitation Service for such evaluation. No evaluation report or proposed rehabilitation program had been completed by the December 10 hearing date. For this reason, appellant stated it was unable to express any view on rehabilitation since no plan had been proposed and no testing had been conducted.

We believe the evidence supports the Commission's finding that appellant controverted vocational rehabilitation benefits. Appellant, by its letter of May 13, took the inflexible view that rehabilitation was unnecessary. When this letter was written, we agree that nothing had been shown to prove appellee's need for rehabilitation except that he desired it and had the required permanent disability to be eligible. Subsequent to May 13, however, appellant received the Chakales and Murtishaw reports which recommended a rehabilitation evaluation. Even so, appellant did not recant its view that rehabilitation was unnecessary and it held this position until the Commission decided the rehabilitation issue on January 25, 1982. During this entire period, appellant not only required the appellee to show that he needed an evaluation, but it also placed the entire responsibility on him to present a proposed program of rehabilitation.

Because of the rigid position the appellant took in May, 1980, appellee was required to seek reports from Chakales and Murtishaw merely to show he needed rehabilitation. At this point, it is noteworthy to mention that appellee's need for rehabilitation was further verified by appellant's own psychiatric report dated March 23, 1981.

Appellant complained at the September and December, 1980, hearings that appellee had submitted neither an evaluation report nor a program. As late as the December 10 hearing, appellant continued to state that it was unable to express any view on rehabilitation since appellee had presented no proposed plan. Appellant's actions only added to the difficulties in obtaining a report or plan. If appellant had ever expressed a willingness to explore appellee's rehabilitation potentials, we may have looked on its position here more favorably. For instance, if appellant had cooperated in obtaining an evaluation report, it would have adequately preserved its right to review any proposed rehabilitation program. Here, appellant denied the need for rehabilitation and its uncooperativeness in this regard proved an obstacle to overcome before either a report or program could be obtained. Under these circumstances, the

Commission was fully justified in finding appellant controverted all rehabilitation benefits.

The next issue is whether the Commission was correct in deciding appellant controverted appellee's entitlement to permanent disability benefits. We find it was. This point also involves the previously mentioned May 13 letter to appellee's attorney. In the letter, appellant offered to pay appellee 15% for his disability. This offer was based primarily on Dr. Shuffield's 10% permanent partial disability rating. Appellant stopped paying benefits at this same time and payments were not resumed until after the September 17, 1980, hearing.

Our court has followed the rule that the mere failure of an employer to pay compensation benefits does not amount to controversion, especially when the carrier accepts the injury as compensable and is attempting to determine the extent of disability. *Hamrick* v. *Colson Company*, 271 Ark. 740, 610 S.W.2d 281 (Ark. App. 1981). On the same subject, our Supreme Court held in *Aluminum Company of America* v. *Henning*, 260 Ark. 699, 543 S.W.2d 480 (1976), that if there is substantial evidence to support a finding that a claim is controverted, there is no abuse of the Commission's discretion to award attorney's fees, and this Court cannot reverse the Commission's finding in the absence of a gross abuse of discretion. Here, appellee's permanent partial disability was known to be at least 10% to the body as a whole as early as April 14, 1980, the date of Dr. Shuffield's report. Dr. Chakales announced his physical impairment rating of 10 to 15% by a report dated July 30, 1980. Chakales included an additional rating to appellee's right arm. With this information, appellant had full knowledge that the extent of appellee's disability would be at least 10%, yet it terminated payment of benefits. Appellant attempts to justify its terminating benefits by arguing appellee's attorney would not respond to its May 13 offer to settle. Of course, appellant knew appellee had been rated 10% disabled when it wrote this letter. It also knew that appellee's attorney had previously demanded 30% in his letter of May 1, 1980. On these facts, we cannot say the Commission abused its discretion.

The third issue raised by appellant concerns the Commission's finding that the appellee's healing period had not ended and that he was entitled to temporary total disability. This question is controlled by our holding in *Mad Butcher, Inc.* v. *Parker,* 4 Ark. App. 124, 628 S.W.2d 582 (1982). In *Mad Butcher,* we determined that the healing period continues until the employee is as restored as the permanent character of his injury will permit. If the underlying condition causing the disability has become stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. The medical evidence reflects appellee has reached his maximum healing period. The latest date to which this period could extend was when Dr. Chakales released him on July 30, 1980. Thus, temporary total disability benefits could have been awarded appellee only within the healing period but not after it had ended. See also, *Arkansas State Highway & Transportation Department* v. *Breshears,* 272 Ark. 244, 613 S.W.2d 392 (1981). Therefore, we reverse the Commission's award of temporary total benefits after July 30, 1980. However, consistent with the procedure we adopted in *Mad Butcher,* we remand this matter for the Commission to decide whether appellee is entitled to "current total disability benefits." See *City of Humphrey* v. *Woodward,* 4 Ark. App. 64, 628 S.W.2d 574 (1982).

The final question we address is whether appellee was excused from formally petitioning for a change in physicians. The procedure to change physicians is set forth in Ark. Stat. Ann. § 81-1311 (Supp. 1979). Among other things, § 81-1311 provides that the Commission may order a change of physicians at the expense of the employer when, in its discretion, such change is deemed necessary or desirable. The Supreme Court has recognized the Commission's discretionary authority to approve such changes retroactively with respect to the employer's liability for fees and expenses incurred after the change. *Emerson Electric Co.* v. *White,* 262 Ark. 376, 557 S.W.2d 189 (1977).

The record before us reflects appellant's adjuster was called by appellee immediately after he was released by Dr. Shuffield. Appellee testified the adjuster told him to go to

another doctor after appellee said that he was still having back problems. The adjuster later testified that he recalled appellee's requesting another doctor but that he normally would not have suggested Dr. Chakales. He admitted that his standard procedure in this case would be to suggest a doctor or to try to agree on a mutually acceptable physician. Based upon these facts, the Commission inferred that the appellant had led the appellee to believe, even though mistakenly, that he could be examined by a physician of his choice. Since this was within the fact finding province of the Commission, we are unable to say it erred or that it abused its discretion in the retroactive approval of the change.

Affirmed in part and reversed and remanded in part.

MAYFIELD, C.J., concurs.

MELVIN MAYFIELD, Chief Judge, concurring. I concur in this case for the same reason I concurred in *Mad Butcher, Inc. v. Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982). I simply want to point out that a claimant's healing period has not necessarily ended just because a doctor has "released" him.