J.A. RIGGS TRACTOR COMPANY *v.* William ETZKORN

CA 89-254                                    785 S.W.2d 51

Court of Appeals of Arkansas
Division I
Opinion delivered March 7, 1990
[Rehearing denied April 4, 1990.]

*Hardin, Jesson & Dawson,* by: *Robert M. Honea,* for appellant.

*David L. Pake,* for appellee Death and Permanent Total Disability Trust Fund.

DONALD L. CORBIN, Chief Judge. This appeal comes to us from the Arkansas Workers' Compensation Commission. Appellant, J.A. Riggs Tractor Company, appeals from an opinion of the full Commission finding that appellee, William Etzkorn's, healing period had not ended and appellant was not entitled to credit for any weekly indemnity benefits paid to date against its maximum liability for permanent total disability benefits imposed by Arkansas Code Annotated Section 11-9-502(b)(1) (1987). We affirm.

Appellee was severely injured in a work-related injury on May 19, 1986, when a front-end loader bucket weighing approximately 2,500 pounds fell on him. There is no dispute that appellee's claim is compensable. The present action results from a disagreement between appellant and the Death and Permanent Total Disability Trust Fund over the extent to which each is liable for appellee's disability benefits. The full Commission affirmed and adopted the administrative law judge's findings of fact and conclusions of law. The Commission found that appellee was still within his healing period and any payments made by appellant

during this period were classified as temporary total disability benefits which could not be credited against the maximum permanent disability benefits for which appellant was liable. It is from this order that appellant appeals.

As its only point for reversal, appellant argues that the Commission erred in holding that it is not entitled to credit against its maximum liability all weekly indemnity benefits paid to or on behalf of appellee. The statute upon which appellant relies, Arkansas Code Annotated Section 11-9-502(b)(1) (1987), provides as follows:

(b)(1) For injuries occurring on and after March 1, 1981, the first seventy-five thousand ($75,000) of weekly benefits for death or permanent total disability shall be paid by the employer or his insurance carrier in the manner provided in this chapter.

This court addressed this issue in *Sparks Regional Medical Center* v. *Death and Permanent Total Disability Bank Fund*, 22 Ark. App. 204, 737 S.W.2d 463 (1987) and held that all weekly disability benefits paid by appellant to the date of the hearing were "temporary total disability" and as such could not be credited against the $75,000 permanent disability benefits payable by the employer before subsequent benefits became the liability of the Death and Permanent Total Disability Trust Fund as provided above in Arkansas Code Annotated Section 11-9-502(b)(1) and (b)(2) (1987). Appellant herein contends that this court should reverse *Sparks* or confine it to its facts, or find that the case at bar does not support a finding that any benefits paid to appellee were anything other than permanent and total disability.

Appellant argues that appellee was permanently and totally disabled as of the date of his accident and that he will probably remain so for the remainder of his life. It, therefore, argues the word "temporary" is not literally descriptive of appellee's total disability. In support thereof, appellant alleges that the term "temporary total disability" is a creature of common law and is not included in the Workers' Compensation Act. Although the act does not specifically refer to temporary total disability, the term has become a definite part of our compensation law with a definite meaning attributable to it. The integration of this term to our act is not unique to our court. As stated in 2 A. Larson, *The*

*Law of Workmen's Compensation* § 57-12(a) (1989):

> Although the earliest compensation acts drew no distinction between "temporary" and "permanent" disability, since they simply paid benefits during any period of actual wage loss, there evolved in America a four-way classification of disabilities, (1) temporary total, (2) temporary partial, (3) permanent partial, and (4) permanent total.

██ Temporary disability is determined by the extent to which a compensable injury affects a claimant's ability to earn a livelihood. Temporary total disability is defined as that period within the healing period in which an employee suffers a total incapacity to earn wages. *Arkansas State Highway and Transp. Dep't v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981). The healing period is defined as that period for healing of the injury resulting from the accident which continues until the employee is as far restored as the permanent character of the injury will permit. If the underlying condition causing the disability has become more stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. *Mad Butcher, Inc. v. Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982). Conversely, the healing period has not ended so long as treatment is administered for the healing and alleviation of the condition. Based on the foregoing, we are unwilling to depart from the above and other decisions which have given these words their idiomatic meanings and decline to reverse or modify our decision in *Sparks* which applies those meanings to Arkansas Code Annotated Section 11-9-502.

Regarding the Commission's finding that appellee's healing period had not ended, the evidence in the case at bar reveals that appellee sustained severe fractures to his pelvic bones in the accident. He also suffered severe crushing of the tissues of the upper thighs, pelvic area, and lower abdomen as well as substantial damage to the bowel and bladder causing loss of control over his bodily functions. A colostomy was performed and a catheter inserted to alleviate these problems. Subsequently, appellee's physicians found it necessary to amputate his left leg at the thigh. Through numerous operations, the colostomy was closed, the catheter removed, and the urethra reconnected. Appellee has become ambulatory with the use of an artificial prosthesis. The

most recent entries in the record from appellee's two primary physicians reveal that appellee was still within his healing period. Dr. Munir Zufari, his surgeon, generally stated that progress was slow and appellee still had various problems. Dr. Zufari noted that after further work with Dr. Sinclair Armstrong, appellee's urologist, he would be in a better position to say if appellee had reached maximum rehabilitation ability. A June 29, 1988, report by Dr. Armstrong stated:

> This is to inform you that Mr. William Etzkorn is still in the healing period. He continues to have significant medical problems which require continued medical treatment.

The determination of when the healing period has ended is a factual determination that is to be made by the Commission, and if that determination is supported by substantial evidence it must be affirmed. *Mad Butcher, Inc.*, 4 Ark. App. at 132, 628 S.W.2d at 586. From the evidence, we are unable to conclude that the finding of the Commission that the healing period had not ended and that appellee was still suffering temporary total disability is not supported by substantial evidence.

Affirmed.

MAYFIELD and ROGERS, JJ., agree.