Ira THURMAN *v.* CLARKE INDUSTRIES, INC.

CA 93-195                                            872 S.W.2d 418

Court of Appeals of Arkansas
En Banc
Opinion delivered March 16, 1994
[Rehearing denied April 13, 1994.*]

*Mayfield, J., would grant rehearing.

*Evelyn E. Brooks*, for appellant.

*Boswell, Tucker & Brewster*, by: *W. Lee Tucker*, for appellee.

JOHN MAUZY PITTMAN, Judge. Ira Thurman appeals from an order of the Arkansas Workers' Compensation Commission awarding him permanent partial disability benefits in an amount equal to a twenty-five percent impairment to his left lower extremity. Appellant contends that the Commission erred in finding that his healing period had ended and in denying his claim for additional temporary total and temporary partial disability benefits. We affirm.

On October 10, 1988, appellant suffered a compensable injury to his left knee. Temporary total disability benefits were

paid by appellee until November 13, 1989. Those benefits were discontinued when appellant refused to undergo the arthroscopic knee surgery that had been recommended by his treating physicians. Appellant then filed a claim for additional temporary total disability benefits. The Commission found that appellant's refusal to have surgery was unreasonable and, in reliance on Ark. Code Ann. § 11-9-512 (1987), denied appellant's claim for any additional benefits. Section 11-9-512 provides as follows:

> Except in cases of hernia, which are specifically covered by § 11-9-523, where an injured person unreasonably refuses to submit to a surgical operation which has been advised by at least two (2) qualified physicians and where the recommended operation does not involve unreasonable risk of life or additional serious physical impairment, the Commission, in fixing the amount of compensation, may take into consideration such refusal to submit to the advised operation.

Appellant appealed to this court. *See Thurman* v. *Clarke Industries, Inc.*, 35 Ark. App. 171, 819 S.W.2d 286 (1991). We noted that, although all four of appellant's physicians had at one time recommended that appellant submit to surgery, three of the four "later retracted their recommendation of surgery on the ground that appellant's subjective fear of surgery was so great as to jeopardize the chances of success." *Id.* at 173, 819 S.W.2d at 287. Therefore, we found that there was no substantial evidence that surgery was in fact recommended by at least two physicians and concluded that § 11-9-512 was inapplicable. We held that "the Commission erred in taking the appellant's refusal to submit to surgery into consideration in fixing the amount of his compensation" and remanded the case to the Commission for "further proceedings not inconsistent with this opinion." *Id.* at 173, 819 S.W.2d at 287.

On remand, appellant contended that he was entitled to temporary total benefits from November 13, 1989, through May 25, 1990 (when he began driving a school bus part-time), and temporary partial benefits from May 25, 1990, through a date yet to be determined. Alternatively, appellant contended that, if the Commission found that his healing period had ended, he was entitled to permanent partial disability benefits.

In its opinion, the Commission acknowledged this court's decision in *Thurman I* and correctly described our holding. The Commission then proceeded to determine appellant's entitlement to additional temporary disability benefits. The Commission found that, without the arthroscopic knee surgery, appellant's healing period had ended on August 28, 1989, and, therefore, that he was not entitled to any additional temporary benefits. The Commission further found, in accordance with the opinion of appellant's treating physician, that appellant had a twenty-five percent permanent impairment to the left lower extremity and awarded him permanent partial disability benefits therefor.

On appeal, appellant contends that the Commission erred in finding that he was not entitled to additional temporary disability benefits. He argues that there is no substantial evidence to support the Commission's finding that his healing period had ended and that the Commission violated this court's decision in *Thurman I* by considering his refusal to have knee surgery. We find no merit in either argument.

Temporary disability is that period within the healing period in which an employee suffers a total or partial incapacity to earn wages. *Arkansas State Highway and Transportation Dep't v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981). The healing period is defined as that period for healing of the injury which continues until the employee is as far restored as the permanent character of the injury will permit. *Arkansas Highway and Transportation Dep't v. McWilliams*, 41 Ark. App. 1, 846 S.W.2d 670 (1993). If the underlying condition causing the disability has become more stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. *Id.*; *Mad Butcher, Inc. v. Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982). Conversely, the healing period has not ended so long as treatment is administered for the healing and alleviation of the condition. *Arkansas Highway and Transportation Dep't v. McWilliams, supra; J.A. Riggs Tractor Co. v. Etzkorn*, 30 Ark. App. 200, 785 S.W.2d 51 (1990).

The determination of when the healing period ends is a factual determination to be made by the Commission. *Arkansas Highway and Transportation Dep't v. McWilliams, supra; Mad Butcher, Inc. v. Parker, supra.* Where the sufficiency

of the evidence to support the Commission's findings of fact is challenged, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. We must uphold those findings unless there is no substantial evidence to support them. *Arkansas Highway and Transportation Dep't* v. *McWilliams, supra.*

Here, as early as August 28, 1989, Dr. Melvin Mumme opined that, without surgery, appellant would experience no further recovery. In light of appellant's refusal to accept that one remaining form of treatment, Dr. Mumme went ahead and assigned appellant a permanent impairment rating. His report stated:

> I have told the patient that he probably needs to consider having an arthroscopy of his knee to evaluate for internal derangement and tear of the medial meniscus. He does not want to consider this. I would not expect him to recover further as it has been 10 months. His limitation *without* correcting his knee derangement would be *25%* on the basis of his motion. . . . *With* arthroscopy and correction of what we think is a torn meniscus the patient's impairment would be expected to be approximately *10%*.

(Emphasis added.) The report of Dr. Richard Back, a psychologist who evaluated appellant in January 1990, stated that "[t]here is no successful treatment available for this patient's phobia [of having surgery] under the existing conditions." At the hearing on remand, appellant testified that his condition was no better or worse than it was at the time of the original hearing. He also testified that he was still unwilling to undergo surgery.

From our review of the record, we cannot conclude that there is no substantial evidence to support the Commission's finding that appellant's healing period ended August 28, 1989. On that date, Dr. Mumme stated that there was no treatment available for appellant's condition, other than surgery, and that without surgery appellant could expect no further recovery. Since that time, no treatment for the healing or improvement of appellant's condition has been administered. While undergoing surgery might still improve appellant's condition, surgery was in no way a realistic possibility at the time of the most recent hearing, nor had it been since at least the time of Dr. Mumme's report. We con-

clude that the mere existence of one remaining form of treatment does not prohibit a finding that a claimant's healing period has ended when the claimant steadfastly refuses to undergo that treatment. *See Savage Welding Supplies* v. *Industrial Commission*, 120 Ariz. 592, 587 P.2d 778 (1978); *Crabtree* v. *Beech Aircraft Corp.*, 229 Kan. 440, 625 P.2d 453 (1981); *Brown Shoe Co.* v. *Pipes*, 581 S.W.2d 140 (Tenn. 1979). Were surgery to continue to be a reasonable and necessary treatment option and were appellant to change his mind and submit to surgery, he could be entitled to additional temporary benefits during his recovery. *See Elk Roofing Co.* v. *Pinson*, 22 Ark. App. 191, 737 S.W.2d 661 (1987) (it is possible for there to be a second, distinct healing period after the original one has ended).

Appellant next contends that the Commission erred in considering appellant's refusal of surgery. Although appellant cites no authority and does not use the phrase "law of the case," it appears as though he is arguing that our decision in *Thurman I* became law of the case and that the Commission violated our order by considering, for any purpose, appellant's decision not to have surgery. We find no error.

The doctrine of *res judicata*, which is applicable to decisions of the Workers' Compensation Commission, forbids the reopening of matters once judicially determined by competent authority. *Lunsford* v. *Rich Mountain Electric Coop.*, 38 Ark. App. 188, 832 S.W.2d 291 (1992). Moreover, matters decided on a prior appeal to this court are the law of the case and govern our actions on a subsequent appeal to the extent that we are bound by them even if we were inclined at the latter time to say that we had been wrong initially. *Id.*

Neither of these principles serve to require reversal of the case before us. In *Thurman I*, we held § 11-9-512 inapplicable to appellant's case because there was no evidence that at least two physicians were recommending that appellant have surgery. Accordingly, we held that the Commission erred in taking appellant's refusal to submit to surgery into consideration "in fixing the amount" of compensation to which he might be entitled. The Commission's action on remand in no way violated our prior decision. Stated simply, the Commission did not consider appellant's refusal in fixing the *amount* of his compensa-

tion. This is evidenced by the fact that the Commission's award was based on its acceptance of the twenty-five percent impairment from which appellant's treating physician opined appellant was actually suffering (*i.e.*, without the surgery) rather than the lesser ten percent impairment from which he would suffer if he underwent the surgery. The Commission considered appellant's refusal, completely independent of § 11-9-512, only for the purposes of deciding whether his healing period had ended and, therefore, determining the *type* of disability benefits (temporary or permanent) to which he was entitled. Clearly, the Commission's original order did not find that appellant remained within his healing period and our order in *Thurman I* did not limit the Commission to awarding appellant temporary benefits on remand. We conclude that the Commission committed no error.

Affirmed.

MAYFIELD, J., dissents.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree with the majority opinion in this case because it allows the Commission to do exactly what we said in our first opinion that the Commission could not do. That opinion said, "we hold that the Commission erred in taking the appellant's refusal to submit to surgery into consideration in fixing the amount of his compensation." *Thurman v. Clarke Industries, Inc.*, 35 Ark. App. 171, 173, 819 S.W.2d 286, 287 (1991). Yet, in spite of that specific holding, the majority opinion affirms the Commission decision which states on the fourth page that:

> Claimant contends that he is entitled to additional benefits because he has not reached the end of his healing period and that he needs psychological treatment to overcome his phobia of surgery. However, it is apparent from a review of the claimant's testimony that he does not desire to undergo surgery, regardless of the circumstances.

Obviously, the Commission took into consideration the claimant's refusal to submit to surgery. The majority opinion says this was permissible because the Commission did not take that refusal into consideration "in fixing the amount" of compensation to which appellant might be entitled. Not only is this a distinction without a difference — the majority recognize that

appellant is seeking "additional temporary total and temporary partial disability benefits" — but this view is contrary to the statutory and case law with regard to medical services. *See* Ark. Code Ann. § 11-9-102(9) (1987) and Ark. Code Ann. § 11-9-102(6) (Supp. 1993); *Brooks* v. *Arkansas-Best Freight System, Inc.*, 247 Ark. 61, 64, 444 S.W.2d 246, 248 (1969) (medical services are included in the statutory definition of "compensation").

After we remanded this case, the claimant's attorney told the administrative law judge at the hearing held on February 11, 1992, that:

> [O]ur position is that he has not reached maximum medical healing. In other words, he may have reached — may or may not have if he had had the surgery, but he didn't have the surgery, and until we can deal with the phobia, assuming we can deal with the phobia, that he's entitled to continuing temporary partial benefits.

Actually, the law judge did not come to grips with the phobia issue presented, and the Commission indicated that it did not read all of the appellant's testimony on this point. Appellant testified that he had discussed the phobia with Dr. Back (the record shows this was a clinical psychologist) in January of 1990, but the doctor said it was not amenable to treatment *at that time*. However, appellant said he had not been back to see Dr. Back in the two years since then; that he did not have the money to see him; that he was willing to see him if the insurance company would pay for it; and that he might now undergo the surgery if he was treated for the phobia and the doctors felt they could perform the surgery.

Thus, the Commission was not accurate in saying that appellant would not undergo surgery "regardless of circumstances." The Commission's "alternative" finding was that claimant's fear of surgery was not caused or aggravated by his compensable injury and the employer would therefore not be liable for the treatment of the phobia. No authority is given for that "alternative" holding and neither the appellee nor the majority opinion in this court comes to grips with this issue. The appellant, however, raises that issue, and just before his conclusion, the third point of his summary is as follows:

3.  Mr. Thurman's healing period will not extend indefinitely. When there is nothing that can reasonably be done to improve Mr. Thurman's knee. . . to make him as good as he can get. . . his healing period will end.

All Mr. Thurman asks toward that end is that he be allowed psychological counseling for a reasonable period of time to explore his phobia of surgery, so that he might be able to undergo surgery and recover from his knee injury.

If, after counseling, he still refuses surgery, his healing period would end because he would have reached maximum recovery.

I would reverse and remand this case with directions to the Commission to provide the appellant the psychological counseling he wants and obviously needs. The issue of the end of the healing period and entitlement to temporary and permanent disability would have to wait until the conclusion of a reasonable period of counseling.