UNIVERSAL UNDERWRITERS INSURANCE
COMPANY, et al. *v.* David BUSSEY

CA 85-323                                                   703 S.W.2d 459

Court of Appeals of Arkansas
Division I
Opinion delivered February 5, 1986

*John W. Unger, Jr.*, for appellant.

*Shackleford, Shackleford & Phillips, P.A.*, by: *Jay E. Hoggard*, for appellee.

DONALD L. CORBIN, Judge. Appellants, Universal Underwriters Insurance Company and Foster Olds-Toyota, Inc., appeal a decision of the Arkansas Workers' Compensation Commission wherein appellee, David Bussey, was awarded permanent partial disability of 15% to his whole body; penalties for controversion and payment of all medical and doctor bills that accrued without

the benefit of the Commission's prior approval of a change of physicians by appellee. We affirm.

Appellee testified that he underwent a cervical fusion by his previously selected physician, Dr. J.C. Callaway, on February 10, 1984. He remained very symptomatic and in a great deal of pain. Dr. Callaway advised him that he had done all he could for him and that appellee would have to learn to live with his pain. Dr. Callaway refused to refer him to Dr. Wilbur M. Giles, a neurosurgeon. Appellee stated he was in excruciating pain and in an effort to alleviate the same sought the services of Dr. Giles on May 21, 1984.

Dr. Giles immediately diagnosed appellee's problem to be a moving graft, i.e., the fusion by Dr. Callaway had failed, causing a false joint. Dr. Giles stated at the initial visit that appellee was extremely anxious, tearful, complaining of severe pain, with marked limitation. Dr. Giles concluded that appellee was a "basket case." Dr. Giles admitted appellee to a hospital on the day he first saw him and performed surgery three days later. Following the surgery appellee experienced a marked reduction in his symptomatology and was able to return to work on July 8, 1984.

The Administrative Law Judge stated in his opinion, which was adopted by the Full Commission, that he did not rely on the failure of the employer to furnish appellee a copy of Commission form A-29, which sets out the requirements for a change of physician, in finding the services of Dr. Giles, other hospitals and physicians compensable. He relied instead upon a portion of Ark. Stat. Ann. § 81-1311 (Supp. 1985), which provides that any emergency treatment afforded an injured employee shall be at the expense of the employer.

Appellants first contend that the Commission erred in ordering appellants to pay all medical expenses associated with the surgery performed by Dr. Giles for the reason that the order was an error of law and unsupported by the facts. Ark. Stat. Ann. § 81-1311 provides in part:

> If the employee selects a physician, the Commission shall not authorize a change of physician unless the employee first establishes to the satisfaction of the Commission that

there is a compelling reason or circumstance justifying a change. . . . Treatment or services furnished or prescribed by any physician other than the ones selected according to the foregoing, except emergency treatment, shall be at the claimant's expense.

■ We fail to find error here. Appellants ask this Court to adopt a strict construction of the term "emergency treatment" and hold that an emergency situation only exists where life is threatened. That construction is contrary to the intent and spirit of the Arkansas Workers' Compensation Act and we decline to adopt it.

■ As observed by this Court, the Workers' Compensation Act is entitled to receive liberal construction from the courts, and the humanitarian objects of such laws should not, in the administration of them, be defeated by over-emphasis on technicalities. Form should not be put above substance. *Brim* v. *Mid-Ark Truck Stop*, 6 Ark. App. 119, 639 S.W.2d 75 (1982).

The record in the case at bar reflects that appellee had been advised by Dr. Callaway that he had done all he could for appellee. Appellee was in such excruciating pain he could not function and was taking massive amounts of drugs. Dr. Callaway refused to refer appellee to another physician. At this time appellee was not represented by counsel. In desperation, appellee sought the services of Dr. Giles.

Immediately upon seeing Dr. Giles, appellee was diagnosed as having an obvious pseudoarthrosis, or false joint, and Dr. Giles admitted appellee to the hospital. Dr. Giles performed surgery to correct the false joint three days later.

Dr. Giles testified that, "Emotionally this young man was at his wits end. He was crying and stated that he had been in need of help and had felt that that had not been provided."

Dr. Giles also testified:

At the time that I saw him he was extremely anxious, tearful, complaining of severe pain, marked limitation, well, he had marked limitation of range of motion of his neck and in all areas, both flexion, extension, and on lateral rotation.

He had marked cervical trapesius spasm and he had weakness in his left biceps and muscle on the left side.

We agree with the Commission that the facts here warranted the conclusion that an emergency situation existed as contemplated by § 81-1311. This conclusion is supported in part by the fact that appellee was immediately hospitalized by Dr. Giles for an obvious pseudoarthrosis and surgery was performed three days later. Appellee thereafter experienced a marked reduction in his symptomatology and was able to return to work. We cannot say that the Commission's finding that appellants were responsible for all medical bills of Dr. Giles and those hospitals and doctors to whom Dr. Giles referred appellee was in error.

Appellants next contend that the finding by the Commission that appellants controverted appellee's permanent partial disability and temporary total disability is an error of law and unsupported by the facts of the case. Their argument is based primarily on their initial disagreement as to the permissibility of appellee's claim for medical treatment rendered by Dr. Giles. Appellants argue that they never controverted the fact that appellee had a disability and claim they had no knowledge as to the extent of appellee's disability. Furthermore, they rely upon the fact that Dr. Callaway never made an assessment of appellee's disability. The record reflects that by a letter to appellants dated August 27, 1984, Dr. Giles opined that appellee had sustained a 5% permanent partial disability to the body as a whole as a result of his injury. On September 26, 1984, counsel for appellants advised appellee that appellants did not controvert appellee's permanent partial disability of 5%. Counsel offered to tender that sum to appellee in full and complete settlement of his claims. As noted by the ALJ in his opinion, appellants took the inconsistent position of admitting appellee had a 5% permanent partial disability but had not paid him any permanent disability benefits. Controversion is a question of fact for the Commission, *Bemberg Iron Works* v. *Martin*, 12 Ark. App. 128, 671 S.W.2d 768 (1984), and we find substantial evidence to support the Commission's finding that appellants controverted appellee's claim.

For their third contention for reversal, appellants argue that

the 10% penalty on the disability benefits awarded appellee is contrary to the law and unsupported by the facts of the case. Appellants contend that the penalty provisions of Ark. Stat. Ann. § 81-1319(e) (Supp. 1985), do not apply to medical bills and legal expenses. However, in the ALJ's opinion it was stated that "All disability benefits, temporary and total, shall be increased by 10% pursuant to § 19(e)." The 10% penalty was neither sought by appellee nor awarded by the Commission on appellee's medical bills and legal expenses.

■ Appellants also argue that the Administrative Law Judge did not recognize any payments made by appellant Foster Olds-Toyota, Inc., in the form of full salary as a credit against amounts due and payable to appellee. The record is clear that the Commission's award did not include or embrace any periods of time during which appellee received his salary from appellant Foster Olds-Toyota, Inc. It has been specifically held that the excess of wages paid over the weekly compensation award cannot be deducted from the award. The employer cannot make such payments and later claim credit for the excess against an award made. *Looney* v. *Sears Roebuck*, 236 Ark. 868, 371 S.W.2d 6 (1963). We find no merit to this contention.

Finally, appellants argue that the award of attorneys' fees is contrary to the law and unsupported by the evidence. Appellants contend that "compensation" as used in Ark. Stat. Ann. § 81-1332 (Supp. 1985), which provides for payment of legal fees on that portion of a compensation award which is controverted, does not include medical expenses.

■ An identical argument has been made before the Arkansas Supreme Court and was expressly rejected. *Ragon* v. *Great American Indemnity Co.*, 224 Ark. 387, 273 S.W.2d 524 (1954). *Ragon, supra*, held that attorneys' fees in a workers' compensation case should consist of a percentage of the amounts expended for medical services and hospitalization in addition to a percentage of the cash awarded to the claimant, since the compensation from which the fees are to be derived include medical and hospital services. We find no error here.

Affirmed.

GLAZE and MAYFIELD, JJ., agree.