Tommy STAFFORD *v.* ARKMO LUMBER COMPANY

CA 94-1373                                                925 S.W.2d 170

Court of Appeals of Arkansas
En Banc
Opinion delivered July 3, 1996

*William F. Sherman*, for appellant.

*Walter A. Murray*, for appellee.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, by: *Robert L. Henry, III* and *Christopher Gomlicker*, for appellee Diamond Constr. Co.

JOHN MAUZY PITTMAN, Judge. Tommy Stafford appeals from an order of the Arkansas Workers' Compensation Commission denying additional temporary total disability benefits and medical benefits arguing lack of support by substantial evidence.

Appellant sustained a compensable injury to his left shoulder on August 2, 1986, while working for Arkmo Lumber Company. He was treated by Dr. Joe W. Crow, an orthopedic surgeon, who performed an acromioplasty on appellant's left shoulder and assigned a 20 percent impairment rating when he released appellant on September 9, 1987, to return to work with lifting restrictions. On December 16, 1988, while working for Diamond Constructing Company, appellant sustained a compensable injury to his neck and back. Appellant stated that before the 1988 injury, his shoulder was

"stiff" but he was able to work without problems. However, after the 1988 injury, he began having pain in his left shoulder. Appellant returned to Dr. Crow for treatment, who opined that the 1988 injury was a new injury rather than a recurrence. Appellant became dissatisfied with Dr. Crow's treatment. The administrative law judge appointed Dr. William F. Blankenship to be appellant's treating physician. Dr. Blankenship provided conservative treatment, physical therapy and injections, and conducted numerous diagnostic tests, such as an EMG and nerve conduction studies. On January 8, 1990, Dr. Blankenship released appellant to return to work with restrictions of no sweeping, mopping, lifting in excess of twenty pounds or overhead lifting. Dr. Blankenship thought that appellant could perform some limited work and that no further medical treatment was needed.

Subsequent to being released by Dr. Blankenship, appellant continued to have complaints and in 1990 sought treatment at UAMS. There, appellant was treated by several physicians. Dr. Samuel Agnew performed a second acromioplasty on November 4, 1992, which alleviated appellant's symptoms. Following the surgery, appellant sought additional temporary total disability benefits from January 1, 1990, to April 1993, medical benefits for treatment from UAMS, and a retroactive change of physician to Dr. Agnew.

The Commission found that appellant failed to prove that his treatment from UAMS was causally related to either compensable injury or to the surgery following the 1986 injury. When reviewing the sufficiency of the evidence to support a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and will affirm if the Commission's decision is supported by substantial evidence. *Wright* v. *ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Cagle Fabricating & Steel, Inc.* v. *Patterson*, 42 Ark. App. 168, 856 S.W.2d 30 (1993). Moreover, the Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict.

*McClain* v. *Texaco, Inc.*, 29 Ark. App. 218, 780 S.W.2d 34 (1989).

Dr. Agnew's December 9, 1992, report stated: (1) that a May 9, 1991, examination revealed recurrent impingement syndrome of appellant's left shoulder, (2) that a repeat acromioplasty was performed November 4, 1992, and (3) that there was no indication that the acromioplasty performed by Dr. Crow after the 1986 injury was inadequate. He further stated, "It cannot be determined with any degree of reasonable certainty as to what event caused the recurrent or persistent symptoms.... Specifically, one cannot determine whether the accident of August 1986, December 16, 1988, or the surgery of Dr. Crow specifically is the event. One can state with reasonable assurity that all three play in some part to [appellant's] overall complaints." Dr. J. M. Grunwald, a physician at UAMS who treated appellant, stated in a September 19, 1990, report that "there is no way to decide if the orthopedic problem which [appellant] has is related to or caused by his work related injury or if they were caused by Dr. Crow's treatment surgery. I do not feel that Dr. Crow's surgery was inadequate or substandard." He further said, "There is no way to decide which part of the symptoms that [appellant] is presenting with is related to his first and which part is related to his second accident." Lastly, Dr. James Blankenship, a UAMS physician, said in a March 23, 1993, report that appellant has two cysts which are almost certainly congenital and which are believed to be causing some of appellant's complaints.

Appellant argues that Dr. Agnew's opinion should be interpreted to mean that both compensable injuries and the first surgery played a part in his need for the second surgery although Dr. Agnew could not say which one precipitated his condition. He also contends that causation was established because the second surgery in November 1992 alleviated his problems.

■ The interpretation of medical opinion was for the Commission, and we cannot say that the Commission's finding that a causal connection between his medical treatment and the compensable injuries was not established is not supported by substantial evidence. Therefore, we decline to address appellant's arguments concerning a change of physician to Dr. Agnew.

Appellant also argues that he is entitled to temporary total disability benefits from January 1, 1990. The Commission found that appellant failed to prove that he was unable to perform employ-

ment subsequent to January 1990 and that the medical and lay testimony indicated that appellant had reached a plateau of recovery and was performing some gainful employment.

■ Temporary total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages. *J. A. Riggs Tractor Co.* v. *Etzkorn*, 30 Ark. App. 200, 785 S.W.2d 51 (1990). After Dr. William Blankenship's release to return to work with restrictions on January 8, 1990, appellant testified that he returned to his employer who did not have any work available within the restrictions. Appellant said that had there been a job available, he would have tried to do it. Appellant stated that he has not sought employment anywhere since his second injury in December 1988. However, the record shows that from at least 1990 to 1992, appellant operated a lawn care business. Appellant said that he could do only two or three yards each week, never worked more than four hours a day, only did a dozen yards in 1991 and earned less than $600 a year in the business. Our review indicates that the Commission's findings and decision to deny temporary total disability benefits is supported by substantial evidence.

Affirmed.

JENNINGS, C.J., and GRIFFEN, NEAL, and ROGERS, JJ., agree.

MAYFIELD, J., dissents.

MELVIN MAYFIELD, Judge, dissenting. This case has been in this court before. In an opinion styled *Stafford* v. *Diamond Construction Co., et al.*, 31 Ark. App. 215, 793 S.W.2d 109 (1990) (Mayfield dissenting), we granted the appellees' motion to dismiss the appeal on the basis that the order the appellant attempted to appeal was not a final, appealable order. Although the style of that case does not specifically name "Arkmo Lumber Company" as an appellee, that appellee was included in the designation "et al."

Thus, there are two appellees in this case. This results from the fact, as the majority opinion points out, that the appellant sustained a compensable injury in August 1986, while working for Arkmo Lumber Company, and sustained another compensable injury in December 1988, while working for Diamond Construction Company. The notice of appeal from the decision of the Commission in this case names both companies as appellees, and both of them have filed briefs.

In order to focus on the points that are involved in this appeal, it is not necessary to recite all of the details of the long and complex history of the case. A short summary, taken from the helpful "Introduction" to the "Argument" in the brief of the appellee Diamond Construction Company, discloses that after appellant's compensable injury in August 1986, he was treated and had surgery on his left shoulder by Dr. Crow, was paid temporary total benefits for some period, and was paid for a permanent partial disability of 20 percent to the arm. And on December 16, 1988, while working for Diamond Construction Company, the appellant sustained a compensable aggravation of his left shoulder. As a result of this disability, he was paid temporary total disability benefits from December 17, 1988, until January 8, 1990, when he was released by Dr. Blankenship. In addition to these benefits, the medical expenses associated with the care of Dr. Crow and Dr. Blankenship have been paid.

The appellant, however, contends in this appeal (1) that he should be paid temporary total benefits for the period from January 8, 1990, to April 1993, (2) that the administrative law judge erred in selecting Dr. Blankenship as appellant's one-time-only change of physician, and the Commission should have allowed a change to UAMS, and (3) that the medical bills of UAMS and all the physicians who rendered medical services to the appellant should be paid.

The issue concerning the change of physician to Dr. Blankenship is the issue that appellant attempted to appeal in *Stafford v. Diamond Construction Co. et al., supra*. The majority opinion in that case stated:

> The appellant . . . petitioned the Workers' Compensation Commission for a change of physician. The petition was granted and a new physician was appointed by the administrative law judge (ALJ). Apparently dissatisfied with ALJ's choice of physician, the appellant appealed to the full Commission contending that he never agreed to the procedure by which the new physician was selected, and the Commission affirmed the ALJ's decision. . . .
>
> . . . Here, the appellant obtained the relief he sought before the Commission . . . and we consider the dispute concerning the method by which the new physician was selected to be interlocutory and incidental in nature. With-

out expressing an opinion on the finality or appealability of an order denying a change of physician, we hold that, on these facts, the order granting a change of physician is not appealable by the petitioning party at this time.

31 Ark. App. at 216, 793 S.W.2d at 110.

This point, therefore, is now before this Court in this appeal. Prior to the first appeal, which we dismissed, the full Commission had held that the ALJ's order was appealable on the basis that it raised an issue to a "separable branch of the litigation," and the ALJ's order was affirmed. However, after this court held that the Commission's order affirming the ALJ's decision was not appealable, the Commission in the decision now before this court again passed on the change-of-physician issue and again affirmed the ALJ's order on that point. The Commission treated the issue as involving a request for a "retroactive change of physician," and held that "claimant failed to prove by a preponderance of the credible evidence that he is entitled to another change of physician . . . ."

This issue is not discussed by the majority opinion; however, it is fully argued in the appellant's brief which points out that on April 19, 1989, the appellant requested a change of physician from Dr. Crow; that on May 9, 1989, the ALJ suggested that the necessity of a hearing could be obviated by allowing him to select an independent examiner; that on June 12, 1989, appellee Diamond Construction, through its attorney, wrote the ALJ and suggested that he enter an order granting a change of physician to a "doctor selected by you"; that on June 16, 1989, appellant's attorney wrote the ALJ that he was in the process of attempting to ascertain the appellant's wishes regarding the ALJ's suggestion, but in a postscript to the letter, the attorney stated, "Since dictating this letter, I have now talked with my client and I now have the authority to agree that you may select the physician to be the change of physicians for [the appellant]."

But the appellant's argument goes on to point out that on the day after appellant's attorney received the ALJ's order filed June 15, 1989, which said that the appellant would be evaluated and treated by Dr. Blankenship and that this would be the one-time-only change under Ark. Code Ann. § 11-9-514(a)(2) (1987), the appellant's attorney hand delivered a letter to the ALJ stating that the earlier letter of the attorney mailed on June 16, 1989, should be

ignored because it "has been superseded by this letter."

Then on June 29, 1989, a hearing was held on this issue by the ALJ who held on July 11, 1989, that the evidence established that the appellant's attorney agreed to the procedure by which a change of physician was made and only objected when he found out that Dr. Blankenship had been selected by the ALJ. Finding that the selection had been made in accordance with the law, and that Dr. Blankenship was a licensed and qualified orthopedic surgeon, the ALJ refused to change his selection.

Appellant argues that there was no agreement that the ALJ could select a one-time-only change of physician; that the full Commission should have allowed appellant to present evidence on this issue; that Dr. Blankenship was a "conservative" physician; and that the appellant was entitled to "reasonable medical care."

Because the above point is closely connected with appellant's other two points in this appeal, I want to discuss the other points now and then come back to the change-of-physician point.

The majority opinion relies upon a report by Dr. Agnew — a doctor at the University of Arkansas For Medical Sciences (UAMS) to whom appellant went after he stopped seeing Dr. Blankenship — to support the holding by the majority that the Commission's decision in this case should be affirmed. The majority opinion states that because the "Commission's finding that a causal connection between [Agnew's] medical treatment and the compensable injuries was not established" is supported by substantial evidence, "we decline to address appellant's arguments concerning a change of physician to Dr. Agnew."

Of course, as the appellant points out in his brief, it should make no difference in evaluating the testimony of Dr. Agnew whether or not his treatment was authorized by the ALJ. *See Markham* v. *K-Mart Corp.*, 4 Ark. App. 310, 630 S.W.2d 550 (1982), citing 2 Larson, *The Law of Workmen's Compensation* § 61.12 (j), at 10-902 (1996), where it is said that "the reports of an unauthorized doctor must be considered in determining extent of disability."

Therefore, putting this matter in proper perspective, we have a worker who admittedly has received two compensable injuries to his left shoulder and has been paid compensation benefits for both of them. After the last injury on December 16, 1988, he received

temporary total disability until January 8, 1990, when he was released by Dr. Blankenship. He then goes to see Dr. Agnew who in a report of December 9, 1992, traces the appellant's medical history and the fact that a left acromioplasty was performed in 1988 while appellant was under the care of Dr. Crow. Dr. Agnew's report also points out that this procedure gave appellant some relief for a period but that he came to UAMS in 1990 complaining of shoulder and parascapular pain. He was started, the report continues, "on local modalities and shoulder girdle strengthening exercises" and that, on or about May 9, 1991, a repeat clinical evaluation was consistent with findings of "recurrent impingement syndrome of his left shoulder and possible AC joint arthritis."

Without setting out the complete report of Dr. Agnew, we quote the following pertinent statements:

> At that time, he was seen by other members of the trauma service, whereby a distal clavicle resection and possible repeat acromioplasty was recommended. Attempts to aid Mr. Stafford with this surgical procedure were unsuccessful due to the inability to obtain hospital admission for Mr. Stafford because of the lack of available hospital beds.
>
> . . . .
>
> On September 10, 1992 Mr. Stafford was seen back in the orthopaedic clinic after having successfully completed an arthrogram which revealed a rotator cuff tear. It was based on his clinical findings and the arthrogram report that repeat acromioplasty was recommended and scheduled.
>
> On November 4, 1992 Mr. Stafford underwent a repeat or revision acromioplasty with [debridement] of his muscular rotator cuff and repair of an erosive type defect in his rotator cuff. On clinical exam at the time of surgery there was no overt evidence of significant pathology and the acromioclavicular joints of this was not addressed surgically. At the present time, Mr. Stafford has been followed on a consistent basis by both myself and the orthopaedic office as well as members of the physical therapy rehabilitation service [and] continues to make increasing gains in his strength and motion.

And in answers to specific questions that the appellant's attor-

ney had addressed to Dr. Agnew, the following answers from his report are quoted:

> Item 2: It cannot be determined with any degree of reasonable certainty as to what event caused the recurrent or persistent symptoms that Mr. Stafford sought our medical attention. Specifically, one cannot determine whether the accident of August 1986, December 16, 1988, or the surgery of Dr. Crow specifically is the event. One can state with reasonable assurity that all three play in some part to Mr. Stafford's overall complaints.

> Item 6: Mr. Stafford is still in the healing, recuperative, or rehabilitative phase of his most recent surgery. It is anticipated that with continued rehabilitation that Mr. Stafford should regain approximately 90% function in a painless manner to his entire arm. . . .

The opinion of the Commission, the briefs of both appellees, and the majority opinion all rely heavily upon one statement made in Dr. Agnew's report to support the finding of the Commission that the evidence does not show that the care and treatment rendered by UAMS (which includes Dr. Agnew) was causally connected to the appellant's work-related injury. That one statement is the answer quoted above in "Item 2." I do not believe, however, that a common-sense reading of that statement could reach the conclusion that Dr. Agnew either said or believed that there was no causal connection between the appellant's work-related injuries and the treatment by Dr. Crow and the treatment and the surgical procedure afforded appellant by UAMS.

The report of Dr. Agnew reasonably and logically traces the factual history of the appellant's injuries and medical treatment. The report explains why and how a repeat acromioplasty was recommended and performed and the anticipated recovery and 90 percent "function in a painless manner" that will likely result from the treatment provided by UAMS. This surgical procedure was performed in November 1992. At the hearing before the ALJ on June 1, 1993, the appellant testified that after this surgery the stinging, burning pain he had in his arm and hand was gone; that the popping he had in his arm and shoulder was gone; that his shoulder is now fine; and that he is now able to work and is trying to "draw me up" a business working on yards and landscaping.

So the appellant, who admittedly sustained compensable injuries to his left shoulder in 1986 and 1988, had a left acromioplasty in 1988 while under the care of Dr. Crow; was in the care of Dr. Blankenship from July 1989 to January 1990; was released to return to work with some lifting and arm-raising restrictions; and was terminated by his employer because there was no work available with those restrictions. At that point, the appellant went to the University Hospital where he saw Dr. J.M. Grunwald. This eventually resulted in the repeat acromioplasty, relief from previous symptoms, and a much brighter outlook for this now forty-three-year-old manual laborer.

But the majority opinion holds that the appellant loses his claim for temporary disability payments because Dr. Blankenship thought his healing period ended in January 1990, and because Dr. Agnew said in "Item 2" of his report that he could not determine "whether the accident of August 1986, December 16, 1988, or the surgery of Dr. Crow" was the specific "event" that "caused the recurrent or persistent symptoms" for which appellant sought treatment at UAMS. Overlooked by the Commission and this court's majority opinion — and skipped over lightly by the appellees — is Dr. Agnew's concluding sentence in "Item 2," that "One can state with reasonable assurity *that all three play in some part* to Mr. Stafford's overall complaint." Actually, Dr. Agnew's statements in "Item 2" of his report lend much more support to a finding that the care and treatment rendered to appellant by UAMS *was* casually connected to his work-related injuries then they do to the contrary finding made by the Commission. And it is obvious that Dr. Blankenship who testified by deposition that he last saw the appellant on January 29, 1990, could not dispute the findings and surgical procedure described in Dr. Agnew's report of December 9, 1992, and could not deny that the appellant's symptoms have dramatically improved since he has been under UAMS care and treatment.

As a legal matter "it is not essential that the causal relationship between the accident and the disability be established by medical evidence . . . or that the evidence be medically certain." *Crain Burton Ford Co. v. Rogers*, 12 Ark. App. 246, 248, 674 S.W.2d 944, 946 (1984). *See also Gerber Products v. McDonald*, 15 Ark. App. 226, 691 S.W.2d 879 (1985). (It should be noted that the change made by Act 796 of 1993, which modified Ark. Code Ann. § 11-9-102 (16) (Repl. 1996) to require that medical opinions be stated with a

reasonable degree of medical certainty, does not apply to the present case where the last injury occurred in 1988.) Moreover, we have also held that "if the original injury is compensable, every natural consequence from it is also compensable." *Hubley* v. *Best Western Governor's Inn*, 52 Ark. App. 226, 232, 916 S.W.2d 143, 146 (1996).

And in simple fact, the Commission's finding that the care and treatment rendered to appellant by UAMS was not causally connected to his work-related injuries is not supported by substantial evidence because fair-minded persons with the same evidence before them could not have reached the same conclusion. In that situation it is our duty to reverse the Commission's finding. *Kuhn* v. *Majestic Hotel*, 324 Ark. 21, 918 S.W.2d 162 (1996); *see also Morgan* v. *Desha County Tax Assessor's Office*, 45 Ark. 95, 871 S.W.2d 429 (1994).

Therefore, I would reverse the Commission's decision that appellant is not entitled to temporary total benefits during the healing period that followed the surgical procedure he received at UAMS in November 1992. The number of days of temporary total disability within that healing period is not a matter that we can determine from the record on appeal, and I would remand to the Commission for a determination of that issue.

As to payment of the medical bills of UAMS and the physicians who performed services for appellant after he was released by Dr. Blankenship, the appellees argue that under Ark. Code Ann. § 11-9-514(a)(1) and (2) (Supp. 1996) the appellant had a one-time-only change of physician from Dr. Crow to Dr. Blankenship, and that to require the payment of the UAMS bills (including the physicians) would constitute a retroactive change of physician contrary to section 11-9-514. I think this argument, under my view of this case, is not on point. Neither is the appellant's argument on point in contending that the ALJ erred in selecting Dr. Blankenship as the physician to replace Dr. Crow. Of course, the appellees are not obligated to pay the medical bills of UAMS and Dr. Agnew unless those bills are for medical care and attention causally connected to appellant's compensable injuries. But having decided that such a connection exists, then the only question left is whether the bills are for medical care and attention that was reasonable and necessary for the treatment of the compensable injuries.

In my view, after Dr. Blankenship released the appellant to return to work and saw appellant for the last time on January 8, 1990, the provisions of Ark. Code Ann. § 11-9-514(a) (1) and (2) no longer applied. At that point the statute that applied was Ark. Code Ann. § 11-9-508(a) and (b), which on the date of appellant's compensable injuries, as well as on January 8, 1992, provided that the employer shall provide for the medical services that are "reasonably necessary in connection with the injury received by the employee," and if the employer fails to provide such services within a reasonable time after knowledge of such injuries the Commission may direct that they be paid by the employer; and that the employer is also liable for emergency treatment rendered an employee as is reasonably necessary in connection with a compensable injury.

The case of *Universal Underwriters Ins. Co.* v. *Bussey*, 17 Ark. App. 47, 703 S.W.2d 459 (1986), deals with the situation discussed in the preceding paragraph of this opinion and is authority for the position I take with regard to what is referred to in this case as the UAMS bills. Of course, it would be necessary to remand for the Commission to determine the amount of the medical bills that should be paid for the care and treatment of the appellant after January 8, 1990.

Therefore, I would reverse and remand for the purposes indicated in this opinion.